341 So.2d 765 (1976)
James ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 45450.
Supreme Court of Florida.
December 16, 1976.
Rehearing Denied February 14, 1977.
*766 Richard L. Jorandby, Public Defender, Kenneth J. Scherer, Chief Asst. Public Defender, and Lois J. Frankel and Craig S. Barnard, Asst. Public Defenders, for appellant.
Robert L. Shevin, Atty. Gen., and Michael M. Corin and George R. Georgieff, Asst. Attys. Gen., for appellee.
PER CURIAM.
This cause is before us on direct appeal from a first degree murder conviction and sentence of death imposed by the trial judge. The jury recommended the death sentence. We have jurisdiction.[1]
On November 12, 1973, at approximately 10:30 a.m., the victim Edgar Brown was brutally beaten with a fire poker during the course of a robbery in his home. Brown was found shortly thereafter, fatally injured and incoherent. He died the next day.
Appellant James Adams was convicted for the murder of Edgar Brown. The evidence reflects that a witness saw Adams and Brown driving in their respective cars toward Brown's home within a few minutes of each other just before the probable time of the crime. Other witnesses located appellant's automobile at the victim's home and driving away from it, with Adams at the wheel, immediately before the wounded Brown was found. Later that day Adams left his car, a brown Rambler, with Sammy Knight, to be painted a light green. When appellant was arrested, he possessed certain money stained with blood of a type matching that of the victim, but not of himself. The denominations of the currency corresponded to the denominations Brown was known to have carried before the attack on his person. A search of Adams' car trunk upon his arrest produced jewelry taken from Brown's home and clothing stained with blood of the victim's type.
At trial Adams denied his presence at Brown's house. Adams' testimony notwithstanding, the jury found him guilty of murder in the first degree and recommended the death penalty. The trial court found that the aggravating circumstances far outweighed any mitigating ones, and on March 15, 1974, sentenced James Adams to death for the killing of Edgar Brown during the perpetration of a robbery.
The principal issue for determination concerns the trial court's instruction on second degree murder. At the conference on instructions, it was noted that the definitions of murder had been revised by the 1972 Legislature. The murder provisions read as follows:
"782.04 Murder. 
"(1)(a) The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of *767 the person killed or any human being, or when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any arson, rape, robbery, burglary, kidnapping, aircraft piracy, or the unlawful throwing, placing, or discharging of a destructive device or bomb, or which resulted from the unlawful distribution of heroin by a person over the age of seventeen years when such drug is proven to be the proximate cause of the death of the user, shall be murder in the first degree and shall constitute a capital felony, punishable as provided in § 775.082.
"(b) In all cases under this section, the procedure set forth in § 921.141 shall be followed in order to determine sentence of death or life imprisonment.
"(2) When perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, or when committed in the perpetration of, or in the attempt to perpetrate, any arson, rape, robbery, burglary, kidnapping, aircraft piracy, or the unlawful throwing, placing, or discharging of a destructive device or bomb, except as provided in subsection (1), it shall be murder in the second degree and shall constitute a felony of the first degree, punishable by imprisonment in the state prison for life or for such term of years as may be determined by the court.
"(3) When perpetrated without any design to effect death, by a person engaged in the perpetration of, or in the attempt to perpetrate, any felony other than arson, rape, robbery, burglary, kidnapping, aircraft piracy, or the unlawful throwing, placing, or discharging of a destructive device or bomb, it shall be murder in the third degree and shall constitute a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 775.084."
Specific instructions were not discussed at the conference. In actually charging the jury on second degree murder, the court used language contained in proposed instructions drafted by the Standard Jury Instructions Committee to comply with the new death penalty statute. These instructions had not been submitted to or approved by this Court. The instruction on second degree murder given by the trial judge was as follows:
"Murder in the second degree is the killing of a human being by the perpetration of an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without a premeditated design to effect the death of any particular individual, and not done in the perpetration of or in an attempt to perpetrate, any arson, rape, robbery, burglary, kidnapping, aircraft piracy, or the unlawful throwing, placing, or discharging of a destructive device or bomb." (Emphasis added)
After retiring to deliberate, the jury requested re-instruction on the degrees of murder. At this point, both the state and appellant moved that the instructions on second degree murder be modified to "more accurately track the statute." The court denied the motions and re-read to the jury all of the original instructions.
Appellant contends that this instruction constitutes prejudicial error, asserting that the wording of the instructions on second and third degree murder bound the jury to a verdict of murder in the first degree if the jury found that Brown was killed as a part of a robbery. This limitation of the jury's options is not error. On the contrary, that result is the very goal of the first degree felony murder provision specified in Section 782.04(1)(a), Florida Statutes (1973).
In its most basic form, the historic felony murder rule mechanically defines as murder any homicide committed while perpetrating or attempting a felony. It stands as an exception to the general rule that murder is homicide with the specific intent of malice aforethought. Under the felony murder rule, state of mind is immaterial.[2] *768 Even an accidental killing during a felony is murder. The malice aforethought is supplied by the felony,[3] and in this manner the rule is regarded as a constructive malice device.[4]
Florida has always had some form of the felony murder rule.[5] In 1892, Florida's felony murder rule was first enacted similar to its present form.[6] First degree murder was defined to comprise not only killings done by premeditated design, but also those "committed in the perpetration of, or in the attempt to perpetrate, any arson, rape, robbery, or burglary."[7] No significant change was made in the felony murder provision until the 1972 revision.
A homicide during one of the enumerated felonies under the 1972 revision is deemed first degree murder only when it is committed by,
"... a person engaged in the perpetration of, or in the attempt to perpetrate ..."
the felony. The second degree murder provision has been modified to include a felony murder provision. It includes the unlawful killing of a person,
"... when committed in the perpetration of, or in the attempt to perpetrate, any arson, rape, robbery, kidnapping, aircraft piracy, or the unlawful throwing, placing, or discharging of a destructive device or bomb, except as provided in subsection (1)...."
In State v. Dixon, 283 So.2d 1 (Fla. 1973), this Court noted the difference between first degree and second degree felony murder:
"The obvious intention of the Legislature in making this change is to resurrect the distinction between principals in the first or second degree on the one hand and accessories before the fact on the other, in determining whether a party to a violent felony resulting in murder is chargeable with murder in the first degree or murder in the second degree... ." Id. at 11.
We pointed out in Dixon, supra, that liability for second degree felony murder occurs when the individual perpetrates the underlying felony as an accessory before the fact but does not personally engage in it. This limited scope of the second degree felony murder provision is dictated by the provision, "except as provided in subsection (1)," which refers to Section 782.04(1), Florida Statutes (1975).[8]
We hold that under the 1972 homicide statute an individual who personally kills another during the perpetration or attempt to perpetrate one of the enumerated felonies is guilty of first degree murder. In such circumstances, the statutory scheme does not allow for a conviction of second degree murder. Moreover, the felon's liability for first degree murder extends to all of his co-felons who are personally present. As perpetrators of the underlying felony, they are principals in the homicide. In Florida, as in the majority of jurisdictions, the felony murder rule and the law of principals combine to make a felon generally responsible for the lethal acts of his co-felon.[9] *769 Only if the felon is an accessory before the fact and not personally present does liability attach under the second degree murder provision of the applicable statute in the instant case.
We conclude therefore that although the trial judge's instructions on second degree murder did not track the statute, under the facts of this case it did not misstate the law. If the jury believed that James Adams fatally beat Edgar Brown in the course of robbing him, Section 782.04, Florida Statutes (1973), required it to return a verdict of murder in the first degree. We find no error in the charge. Subsequent to the trial in the instant case, this Court approved an appropriate standard jury instruction under the present statute[10] and it should be the instruction used rather than the instruction found not erroneous in this cause.
Our final responsibility is to consider the appropriateness of the death sentence in order to determine independently whether the death penalty is warranted. State v. Dixon, supra.
The facts found by the trial judge support the following aggravating circumstances: (1) Adams committed the murder while under a sentence of imprisonment, specifically while an escapee from the State of Tennessee, where he had been convicted of rape and sentenced to ninety-nine years imprisonment; (2) Adams was previously convicted of a felony involving the use or threat of force to a victim; (3) Adams committed the murder during the course of a robbery; (4) The murder was especially heinous, atrocious, and cruel, the record reflecting that he murdered his victim by beating him past the point of submission and until his body was grossly mangled. None of the statutory mitigating circumstances were shown to exist. The sole mitigating factor offered at trial was that the appellant is a human being.
We hold the sentence of death is appropriate, and affirm.
It is so ordered.
OVERTON, C.J., and ADKINS, ENGLAND, SUNDBERG and ROBERTS (Retired), JJ., concur.
BOYD, J., dissents with an opinion.
HATCHETT, J., dissents.
BOYD, Justice, dissenting.
In my opinion, the majority's attempt to distinguish first and second degree felony murder does not work for the simple reason that the distinction is not present in the statute itself. The statute provides that when death results in connection with a robbery a verdict of second degree murder may be returned. Murder "... committed in the perpetration of, or in the attempt to perpetrate, any arson, rape, robbery, burglary, kidnapping, aircraft piracy, or the unlawful throwing, placing, or discharging of a destructive device or bomb, except as provided in subsection (1), it shall be murder in the second degree ... ."
The trial court specifically instructed the jury that it could not find the defendant guilty of second degree murder if it found the crime to have been committed in the perpetration of a robbery. The instruction effectively foreclosed the jury's right to find the defendant guilty of second degree murder, although it is well recognized that juries may find persons guilty of lesser included offenses in Florida under Brown v. State, 206 So.2d 377 (Fla. 1968), and its progeny up to the recent case of State v. Terry, 336 So.2d 65 (Fla. 1976). Furthermore, the jury was prohibited from giving a "jury pardon," a concept often recognized by this Court, e.g., Bailey v. State, 224 So.2d 296 (Fla. 1969).
In my opinion, the charge to the jury was fundamentally erroneous. No person *770 should be executed based upon a record containing obvious reversible error, and it would certainly be improper to classify this error as harmless.
It is significant that five of the twelve jurors voted to recommend life imprisonment instead of death upon finding appellant guilty of first degree murder. Although convinced the murder occurred in the course of a robbery, they might have held out for a conviction of second degree murder had the opportunity to do so not been foreclosed by the trial court's charge.
The gory and cruel nature of the crime should not justify what I conceive to be fundamental error. Human life is too precious to be extinguished by the State without a legally proper trial.
I would reverse the judgment of the trial court and order a new trial.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] Model Penal Code, § 201.2, Comments at 39 (Tent.Draft No. 9, 1959).
[3] See, e.g., Sloan v. State, 70 Fla. 163, 69 So. 871 (1915).
[4] Morris, The Felon's Responsibility for the Lethal Acts of Others, 105 U.Pa.L.R. 49, 59 (1956).
[5] See Fla.Laws 1822, § 1 at 53, § 24 at 145; Fla.Laws 1824, § 11 at 208; Fla.Laws 1832, Ch. 55, § 1 at 63; and Fla.Laws 1868, Ch. 1637, Subch. 3, § 1, 2 at 63.
[6] Fla.Laws 1892, Ch. 2377-94 at 773-76.
[7] Fla.Laws 1892, Ch. 2380 at 774.
[8] Subsequent revision of second degree felony murder provision suggests also that perpetrator of a felony would be liable for second degree murder if during the felony there occurred a killing not committed by the felon or one of his co-felons. Thus if in resisting a felony, the victim kills an innocent bystander, the felon would be susceptible to a charge of second degree murder. See Section 782.04(3), Florida Statutes (1975).
[9] See Pope v. State, 84 Fla. 428, 94 So. 865 (1922). See generally, Note, A Survey of Felony Murder, 28 Temple L.Q. 453 (1955).
[10] For jury instructions on murder appropriate under the current statute, see Florida Standard Jury Instructions in Criminal Cases, Homicide (2d ed. 1975).