**James ADAMS, Petitioner,**

v.

**Louie L. WAINWRIGHT, Respondent.**

No. 82–5595.

United States Court of Appeals,
Eleventh Circuit.

July 18, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 12, 1983.

Craig S. Barnard, Chief Asst. Public Defender, Jerry L. Schwarz, Tatjana Ostapoff, Asst. Public Defenders, West Palm Beach, Fla., for petitioner.

Robert L. Bogen, Sharon Lee Stedman, Asst. Attys. Gen., West Palm Beach, Fla., for respondent.

Before RONEY and CLARK, Circuit Judges, and GIBSON *, Senior Circuit Judge.

PER CURIAM:

Convicted of first degree murder and sentenced to death, James Adams appeals the denial of his petition for a writ of habeas corpus. All of Adams' arguments on appeal concern the imposition of the death penalty. We affirm essentially on the basis of the district court's extensive opinion. We briefly review the case and address Adams' contentions *seriatim* as presented to us.

In the course of a robbery at the victim's home, Adams beat Edgar Brown senseless with a firepoker. Brown died the following day. A Florida jury found Adams guilty of murder and recommended the death penalty, which the trial judge imposed. The Florida Supreme Court affirmed the conviction and sentence. *Adams v. State,* 341 So.2d 765 (Fla.1976). The United States Supreme Court denied certiorari. *Adams v. Florida,* 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 158 (1977). The Florida Supreme Court later denied an application for relief based on the trial court's alleged reliance on confidential and erroneous information during the penalty phase of the trial, *Adams v. State,* 355 So.2d 1205 (Fla.1978), and the United States Supreme Court again denied certiorari. *Adams v. Florida,* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). When the Florida state courts denied any collateral relief, *Adams v. State,* 380 So.2d 423 (Fla.1980), Adams filed his petition for habeas corpus relief in federal district court. The district court denied the writ in an unpublished opinion, but granted a certificate of probable cause and a stay of judgment pending appeal.

*Ineffective Assistance of Counsel*

Adams argues his counsel was ineffective during the penalty phase of the trial because he failed to present any mitigating evidence. Counsel's closing argument consisted exclusively of a plea for mercy.

The crucial question is whether counsel's decision to make a plea for mercy, in lieu of presenting any mitigating evidence, was one of strategy taken after he reasonably investigated other plausible options. In *Washington v. Strickland,* 693 F.2d 1243, 1253–54 (5th Cir. Unit B 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), we observed that a strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternatives. *Cf. Westbrook v. Zant,* 704 F.2d 1487, 1500 (11th Cir.1983) (strategic decisions generally do not render counsel ineffective). Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. *Washington v. Strickland,* 693 F.2d at 1254; *see also Ford v. Strickland,* 696 F.2d 804, 820 (11th Cir.1983) (en banc); *Baldwin v. Blackburn,* 653 F.2d 942, 946 (5th Cir.1981), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982); *Beckham v. Wainwright,* 639 F.2d 262, 265 (5th Cir.1981). The burden of proof to establish ineffectiveness and prejudice is on the petitioner. *Washington v. Strickland,* 693 F.2d at 1258, 1262; *Adams v. Balkcom,* 688 F.2d 734, 738 (11th Cir.1982).

Adams has failed to establish that the decision to ask the jury for mercy reflected less than reasoned professional judgment. Adams did not call trial counsel to testify at the state hearing and gave no indication to the district court as to how trial counsel would testify at any district court hearing. Support counsel did testify before the state court that the trial file revealed no specific investigation into cer-

---

* Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

tain matters, such as Adams' work record, church activity and lack of education, but acknowledged that the file showed counsel had interviewed Adams' wife, neighbors and former employers. Notes in the file indicated the wife knew Adams' background completely. In short, there is no basis in this record for finding that counsel did not sufficiently investigate Adams' background.

Assuming counsel's decision to forego presenting evidence of Adams' background was one of tactics, it does not appear to have been patently unreasonable. As the district court noted, counsel may have feared that if he presented evidence about defendant's background, the state could have refuted it by calling attention to damaging evidence in the record. For example, if counsel had offered evidence of Adams' family life, the state could have emphasized that Adams was separated from his wife at the time of the murder because of his relationship with a sixteen-year old girl. Similarly, if counsel had presented evidence of Adams' religious devotion, the state could have noted that he spent the Sunday before the Monday murder gambling. Counsel could have reasonably decided that raising Adams' background might do more harm than good, and that the best strategy was to ask for mercy. *See Stanley v. Zant,* 697 F.2d 955, 965 (11th Cir.1983).

■ The other actions for which Adams faults his counsel do not amount to ineffectiveness. Adams argues his attorney should have objected first when, during the penalty phase, the state brought out that the victim of a prior rape committed by Adams was white, and second when, during argument thereafter, the state's attorney mentioned that the murder victim was a prominent, long-time local resident and Adams was from Tennessee. Defense counsel probably should have objected on both occasions. Effective counsel, however, does not mean errorless counsel. *Adams v. Balkcom,* 688 F.2d at 738; *Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983); *Young v. Zant,* 677 F.2d 792,

798 (11th Cir.1982); *Mylar v. Alabama,* 671 F.2d 1299, 1300 (11th Cir.1982), *petition for cert. filed,* 50 U.S.L.W. 3984 (U.S. June 15, 1982) (No. 81–2240). In any event, Adams has not shown the failure to object worked to his "actual and substantial disadvantage." *Washington v. Strickland,* 693 F.2d at 1242. Put another way, it does not appear that objections by counsel would have worked to Adams' advantage in any material way.

Adams complains about the failure to "clarify" his criminal record which had been brought out at trial. Adams contends that when he testified at trial on cross that he had five or more previous convictions, he was mistaken. According to Adams, counsel should not only have realized this mistake, but also should have discovered the allegedly questionable constitutionality of three convictions. By calling attention to Adams' prior record, however, counsel might have hurt his client. The record does not establish the number of prior convictions, but there is no doubt that Adams had at least three previous convictions, including one for rape. Adams failed to establish prejudice. The government raised only the rape conviction during the sentencing proceeding, the judge properly instructed the jury to consider only statutory aggravating circumstances, and the trial court found numerous statutory aggravating circumstances to warrant the death sentence.

### Imposition of the Death Penalty for Felony Murder

■ As the murder occurred during the course of a robbery, Adams was indicted for and convicted of felony murder. Florida law classifies as first degree murder, punishable by death, a homicide committed without premeditation during the commission of certain felonies, including robbery. Fla.Stat.Ann. § 782.04(1)(a). Relying principally on *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), Adams argues the death sentence in this case is disproportionate and excessive because it is based on felony murder without a specific finding of intent to kill.

Although *Enmund* did hold that the death sentence could not be imposed where no intent is shown and the killing occurs during the perpetration of a felony, that case is readily distinguishable. Defendant Earl Enmund in that case was waiting in the getaway car during a planned robbery when one or both of his two co-felons shot and killed two victims who resisted the robbery. The Supreme Court held the death penalty disproportionate to Enmund's culpability, reasoning that he personally "did not kill or attempt to kill" or have "any intention of participating in or facilitating a murder." —— U.S. at ——, 102 S.Ct. at 3377, 73 L.Ed.2d at 1152. Here Adams personally killed his victim, savagely beating him to death. Adams acted alone. He is fully culpable for the murder. Under these circumstances, the death penalty is not "grossly disproportionate and excessive." *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion).

Adams also argues that Florida has impermissibly made the death penalty the "automatically preferred sentence" in any felony murder case because one of the statutory aggravating factors is the murder taking place during the course of a felony. The short answer is that the United States Supreme Court has upheld the Florida death penalty statute, including necessarily the use of this statutory aggravating factor. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Florida does not mandate the death penalty in all felony murder cases. The defendant is not precluded under Florida law from presenting any mitigating factors. *See id.* at 250 n. 8, 96 S.Ct. 1 at 2965 n. 8; *Ford v. Strickland,* 696 F.2d at 812.

### Aggravating Circumstances Considered by Judge and Jury

■ Adams argues the aggravating circumstances considered by the trial judge and jury failed to channel their sentencing discretion as required by cases such as *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). With respect to the jury's consideration, Adams contends the prosecutor's closing remarks, in which he referred to the prominence and local roots of the victim, introduced for jury consideration nonstatutory aggravating circumstances. The judge properly instructed the jury, however, that it could consider only the aggravating circumstances listed in the statute. A jury is presumed to follow jury instructions. *See Grizzell v. Wainwright,* 692 F.2d 722, 726–27 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983).

■ In regard to the judge's consideration of aggravating circumstances, Adams faults the judge for finding the murder "especially heinous, atrocious, or cruel." In upholding the trial judge's finding, however, the Florida Supreme Court properly noted that Adams had killed his victim "by beating him past the point of submission and until his body was grossly mangled." *Adams v. State,* 341 So.2d at 769. Although Adams argues there are Florida cases with similar facts which were not held to be "especially heinous, atrocious, or cruel," it is not the role of the federal courts to make a case-by-case comparison of the facts in a given case with other decisions of the state supreme court. *Ford v. Strickland,* 696 F.2d at 819; *Spinkellink v. Wainwright,* 578 F.2d 582, 604–05, *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

■ Finally, Adams contends the judge's written findings reveal he considered a nonstatutory aggravating circumstance, the defendant's prior criminal record. Although it may be unclear from his findings whether the judge considered Adams' record as an aggravating circumstance or only to the extent those convictions negated the statutory mitigating circumstance of insignificant prior criminal history, it is reasonable to assume that the trial judge followed his own jury instructions and considered only statutory aggravating circumstances.

### Failure to Require Resentencing When Evidence Insufficient on Some Aggravating Circumstances

On direct appeal, the Florida Supreme Court upheld the death sentence even

though it determined the evidence did not support two of the six aggravating circumstances found by the trial judge. *Adams v. State,* 341 So.2d at 769. The six aggravating circumstances relied upon by the trial judge were (1) the commission of the homicide by a person under sentence of imprisonment, Fla.Stat.Ann. § 921.141(5)(a); (2) the commission of the homicide by an individual previously convicted of a felony involving the use or threat of violence to a person, *id.* § 921.141(5)(b); (3) the commission of the homicide during the course of a robbery, *id.* § 921.141(5)(d); (4) the commission of the homicide to avoid arrest, *id.* § 921.141(5)(e); (5) the commission of the homicide for pecuniary gain, *id.* § 921.-141(5)(f); and (6) the especially heinous, atrocious, or cruel nature of the homicide, *id.* § 921.141(5)(h). The Florida Supreme Court struck circumstances (4) and (5) as unsupported by the evidence.

Adams argues a death sentence cannot be constitutional when some, but not all, of the aggravating circumstances are struck, even though there are no mitigating circumstances. This argument is foreclosed by *Ford v. Strickland,* 696 F.2d 804 (11th Cir. 1983) (en banc), in which we denied constitutional relief where the Florida Supreme Court had struck three out of eight aggravating circumstances. The Florida court noted here that there were no statutory mitigating circumstances and that Adams had argued only one nonstatutory mitigating factor, his status as a human being. *Adams v. State,* 341 So.2d at 769.

*Restriction on Consideration and Presentation of Mitigating Factors*

■ Adams alleges that, in an unrecorded conference held in chambers prior to the sentencing stage of trial, the trial judge expressly precluded him from presenting to the jury nonstatutory mitigating evidence in violation of *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982). At the state court hearing on the motion to vacate, support counsel testified

that he recalled the judge's making a statement to this effect in this case, but he was not sure about the recollection because he had been involved in a number of death cases. Although he stated lead counsel had verified the recollection in a recent conversation, lead counsel did not testify at the hearing. The state court held this evidence insufficient and denied relief. The Florida Supreme Court affirmed, reasoning:

Finally, we reject the claim that the sentencing process must be voided because of a tenuous recollection of assistant defense counsel of an unrecorded conversation with the trial judge, particularly when there was no proffer of specific nonstatutory mitigating circumstances at the original trial. We note that assistant defense counsel initially was not even certain that the conversation took place during this appellant's trial.

*Adams v. State,* 380 So.2d at 424. The state court's factual determination that the evidence did not support the claim is entitled to a presumption of correctness. 28 U.S.C.A. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–769, 66 L.Ed.2d 722 (1981) (applying presumption of correctness to findings made by a state appellate court). This factual determination is permitted by the record. The trial judge did not expressly instruct the jury not to consider nonstatutory mitigating circumstances, and he permitted defense counsel to argue that Adams' life should be spared because he is a human being, a nonstatutory factor.

Adams argues, however, that the jury instruction implied nonstatutory mitigating factors could not be considered. Adams did not object to the instruction as required by Fla.R.Crim.P. 3.390(d).

In a case involving a virtually identical jury instruction, *Ford v. Strickland,* 696 F.2d 804 (11th Cir.1983) (en banc), we held that under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the procedural default precluded review because the petitioner had not established

prejudice. He had failed to show that the jury perceived it could not consider nonstatutory mitigating factors. 696 F.2d at 812–13. *Ford* disposes of Adams' argument.

### The Brown Issue: Nonrecord Material Before the Florida Supreme Court

 Adams was one of the 123 Florida death row inmates who unsuccessfully sought relief in state court based on the Florida Supreme Court's receipt of nonrecord information in connection with the review of death cases. *Brown v. Wainwright*, 392 So.2d 1327 (Fla.), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).

His argument in the federal court is foreclosed by *Ford v. Strickland*, 696 F.2d 804 (11th Cir.1983) (en banc). Adams has no specific evidence that the Florida Supreme Court relied on nonrecord information in his case.

### Arbitrary and Capricious Imposition of the Death Penalty on the Basis of Race and Geography

 Finally, Adams argues that the death penalty in Florida is imposed disproportionately in cases involving a white victim and in cases tried in St. Lucie County. In a motion before a state court for expert assistance in post-conviction proceedings, Adams cited statistics which arguably tended to support his claim. The statistics indicated, for example, that from 1973–1977 St. Lucie County accounted for 1.6% of the homicides statewide, but 3.2% of the death sentences, and that during this four-year period the death penalty was imposed in St. Lucie County in 17% of the cases involving white victims and none of the cases involving black victims, even though there were more than twice as many cases involving white victims. The state court denied Adams relief without affording him expert assistance.

 We need not decide whether the statistics provided by Adams suggest a disparate impact based on race and geography in the imposition of the death penalty in Florida. *See generally* Zeisel, *Race Bias in the Administration of the Death Penalty: The Florida Experience,* 95 Harv.L.Rev. 456 (1981). Disparate impact alone is insufficient to establish a violation of the fourteenth amendment. There must be a showing of an intent to discriminate. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 562–563, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 239, 242, 96 S.Ct. 2040, 2047, 2049, 48 L.Ed.2d 597 (1976); *Spinkellink v. Wainwright,* 578 F.2d 582, 614–15 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1978). Only if the evidence of disparate impact is so strong that the only permissible inference is one of intentional discrimination will it alone suffice. *See Smith v. Balkcom,* 671 F.2d 858, 859 (5th Cir. Unit B), *cert. denied,* —— U.S. ——, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). That is not the case here. There were only four death sentences imposed in St. Lucie County during the four-year period, so the variance in the percentage of such sentences in cases involving white and black victims is not all that revealing. *See Adams v. State,* 380 So.2d at 425; *see also Spinkellink v. Wainwright,* 578 F.2d at 612 & n. 37, 615 (citing evidence suggesting nondiscriminatory reasons for the higher death penalty rate in Florida cases involving white victims).

Adams has not proffered any evidence that the death sentence in his case is the product of intentional discrimination. The Florida statute is unquestionably neutral on its face as to race and geography. *See Spinkellink v. Wainwright,* 578 F.2d at 614. In *Spinkellink*, we rejected a similar claim of racial inequity by a Florida death row inmate who proffered statistical evidence of a disparate impact but no convincing evidence of intentional discrimination. The Court stated:

> Mere conclusory allegations, as the petition makes here, such as that the death penalty is being "administered arbitrarily and discriminatorily to punish the killing of white persons as opposed to black per-

sons" ... would not warrant an evidentiary hearing.

*Id.* at 614 n. 40; *see also Smith v. Balkcom,* 671 F.2d at 860. Because Adams was not entitled to a hearing, he was not entitled to appointed experts to assist him at a hearing.

### Conclusion

We have carefully reviewed all of the arguments on appeal and all of the points ruled on by the district court. The district court's denial of the writ of habeas corpus is

AFFIRMED.