[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 7, 2006
THOMAS K. KAHN
CLERK

No. 05-12312
Non-Argument Calendar
_____

D. C. Docket No. 04-80950-CV-WPD

WALKER YOUNG,

                                                    Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
James V. Crosby,

                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(June 7, 2006)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Walker Young, a Florida prisoner proceeding pro se, appeals the district court's denial of his habeas corpus petition, which was brought pursuant to 28 U.S.C. § 2254. The district court issued a certificate of appealability solely on the issue of whether counsel's opening the door to testimony about Young's aliases, in accordance with the defense theory of the case that someone else committed the charged conduct, amounted to ineffective assistance of counsel. Concluding that Young was not prejudiced by his trial counsel's strategic choices, we AFFIRM.

## I. BACKGROUND

Young was found guilty of armed robbery by a jury and sentenced to a twenty-five year term of imprisonment. After exhausting his state-level postconviction relief,[1] Young filed a federal habeas petition asserting three grounds for relief. The district court denied the petition and issued a certificate of appealability on only one of Young's three claims: the claim for ineffective assistance of counsel.

Young argues that his counsel's performance was constitutionally deficient because he opened the door to testimony regarding Young's aliases, which

---

[1] The Florida court denied Young's motion for postconviction relief, observing that "[n]one of the claims in Defendant's specific allegations of error in grounds one through five meets the test of Strickland v. Washington, 105 S. Ct. 2052 (1984)." R3-17, App. 17 at 1.

testimony Young asserts prejudiced him in the eyes of the jury. Although there is no direct evidence from Young's defense counsel regarding his trial strategy, it is clear from the record that Young's counsel was attempting to establish a case of mistaken identity. On cross-examination of the lead detective in the case, Young's counsel asked the officer if Young had been arrested under a warrant for Michael Johnson, thereby inferring that another person was suspected of the robbery.

The prosecution examined the victims of the robbery, a husband and wife. They testified that Young had asked them for a ride and offered to sell his television to them. When the victims and Young arrived at Young's apartment, the husband got out and accompanied Young to the top of some stairs, where Young pulled out a gun and demanded the husband's wallet. Young also took the wife's wallet from her purse.

The husband identified Young as someone he had seen around his apartment complex in the past and identified Young as the man to whom he had given a ride in his van on the day of the robbery. The wife also identified Young as the man to whom her husband had given a ride that day. The husband identified Young in a photo lineup prior to trial and identified Young in court as man who had robbed him.

Young testified in his own defense. He stated that he was Walter Young and

3

testified that he had never gone by either the name Walker Young nor Michael Johnson. R3-17, App. 4 at 329–30. These responses are consonant with a mistaken identity defense. However, on cross-examination, Young admitted that he was known as Walker Young and that he had five prior felony convictions under that name. Id. at 333–34. He also admitted to being called Michael Johnson but that this name was an error that he was trying to "straighten . . . up." Id.

On appeal, Young argues that the district court, in finding that defense counsel was merely anticipating cross-examination, misapplied the law because there is no evidence in his case to establish that defense counsel's actions were done in anticipatory rehabilitation. The government responds that Young's counsel was not ineffective, and, even if he was, that the error is not recognizable under federal habeas law because the state courts of Florida did not engage in an unreasonable application of clearly established law. We address these ineffective assistance arguments pursuant to the certificate of appealability.

## II. DISCUSSION

"The district court's . . . denial of habeas corpus relief [under § 2254] is reviewed de novo." Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998). "A district court's factual findings in a habeas corpus proceeding are reviewed for

clear error." Id. (quotations and citation omitted). An ineffective assistance "claim is a mixed question of law and fact which we review de novo." Id.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), § 2254(d) forbids federal courts from granting habeas relief on claims that previously were adjudicated in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is an "unreasonable application" of clearly established law if the state court unreasonably applied the established law to the facts of a case or unreasonably extended, or failed to extend, a legal principle to a new context. Williams v. Taylor, 529 U.S. 362, 407, 120 S. Ct. 1495, 1520 (2000). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S. Ct. at 1521.

The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To make such a showing, a prisoner must prove two things. First, the

5

prisoner "must show that counsel's performance was [constitutionally] deficient." Id. at 687, 104 S. Ct. at 2064. Second, the prisoner must show "that the deficient performance prejudiced the defense." Id.

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is" one "sufficient to undermine confidence in the outcome." Id. Regarding this second prong of the Strickland analysis, Young has cited no case that would demonstrate that the Florida courts unreasonably applied the applicable binding case law. Thus, the only question before us is whether the Florida courts engaged in an unreasonable application of Strickland.

Young has articulated no reason that another outcome would have occurred as a result of his trial if his attorney had not asked questions related to his aliases. Assuming that the jury would infer that the use of aliases predisposes criminal activity, Young's strongest argument is that his counsel opened the door to unhelpful testimony regarding Young's use of aliases. Nonetheless, this information was incident to Young's counsel's theory of the case, which was that police were following a lead on someone named Michael Johnson and that Young's prosecution was a case of mistaken identity. Young later took the stand

6

and disavowed the use of aliases. This direct testimony supports Young's counsel's theory of the case. Because such a tactical decision is not "so patently unreasonable that no competent attorney would have chosen it," Young's counsel's performance was not constitutionally deficient. See Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (per curiam).

Furthermore, this theory of the case could not withstand the weight of the remaining evidence. Both of the victims of the armed robbery identified Young in a photo line up, and the husband testified that Young was the man who robbed him. Young also admitted that he had committed five prior felonies during his cross-examination and that he had be known by other names, including that elicited during his counsel's cross examination of the detective. Given this evidence, there is no "reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

To the extent that there would have been any prejudice in his counsel's broaching the subject of the alias Michael Johnson, Young addressed that confusion by explaining that the name was an error that he was trying to remedy. Finally, Young fails to explain how his counsel's discussion of the name Michael Johnson made it any more likely that he committed the robbery at issue in the trial, especially given Young's flat denial of using that name during his direct

examination and opportunity to explain the confusion during his cross-examination.  Given the overwhelming weight of other testimony, we conclude that there was no prejudice to Young as a result of his attorney's actions.

### III.  CONCLUSION

The district court issued a certificate of appealability regarding ineffective assistance of counsel.  Because Young cannot show that the state court unreasonably applied <u>Strickland</u> when it found that there was no prejudice to Young by his attorney's introducing information regarding his aliases, there was no error.

**AFFIRMED.**