[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12526

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KIRK HOWARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:20-cr-00011-MW-MJF-1

_____

Before WILLIAM PRYOR, Chief Judge, LUCK and LAGOA, Circuit Judges.

PER CURIAM:

Kirk Howard, a federal prisoner, appeals the denial of his motion for a new trial. Fed. R. Crim. P. 33. Howard argued that his trial counsel, Rachel Seaton, was ineffective for refusing to argue that officers planted drugs in his home and for discrediting his testimony during closing argument. The district court ruled that Seaton was not ineffective by refusing to present a defense unsupported by her pretrial investigation or by making a closing argument that accounted for Howard's testimony and offered a plausible defense. We affirm.

A grand jury indicted Howard for possessing with intent to distribute 500 grams or more of a mixture containing methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and for possessing a firearm and ammunition as a felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2). Howard pleaded not guilty to both charges.

At trial, the government presented testimony from Agent Alain C. Llorens of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Investigator Steven Cook of the Bay County Sheriff's Office, and a cooperating drug seller. Agent Llorens arrested Timothy Hester for distributing drugs and, after agents found nine ounces of methamphetamine in Hester's home, he identified Howard as his supplier. Hester then arranged a controlled purchase by

sending to Howard a text message, "Hey, I'm ready." Agent Llorens and Investigator Cook surveilled Howard and watched him put what appeared to be a sheet or bag with camouflage print in his vehicle and drive to Hester's house. Agents stopped Howard in Hester's driveway and, after a police canine alerted to the presence of drugs in his vehicle, discovered a camouflage blanket wrapped around a bag of nine ounces of methamphetamine on the back seat and a loaded Taurus firearm in the glove compartment. Howard waived his rights to remain silent and to counsel, *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and consented to agents searching his residence. Agents transported Howard home where the mother of Howard's children, Mercedes Lyons, who resided there, also gave verbal consent to the search after speaking with Howard. Both Howard and Lyons signed written waivers. Agents seized a drug scale from the studio bedroom, multiple scales inside the home that were encircled by methamphetamine, a shoebox containing methamphetamine, and plastic bags.

Lyons testified as a hostile witness. She stated that she consented begrudgingly to a search of her home and claimed ownership of the Taurus firearm found in Howard's glovebox. But when confronted with her past statements to Agent Llorens, Lyons acknowledged she had consented to the search and that she bought the gun at Howard's request and in his company. When confronted with her earlier statement that Howard showed her how to use the gun, Lyons replied that she never said Howard touched the gun and that he provided instruction by video call. Lyons also testified

that a man named Cornelius, who fathered her third child, had lived with her until the day before agents searched her house.

The government rested its case and Howard moved for a judgment of acquittal on both charges. Howard argued that the government failed to prove he knowingly possessed the methamphetamine discovered in Lyons's house and failed to prove that he knowingly possessed the seized firearm because it did not have his latent prints or his biological material. The district court denied Howard's motion.

Howard complained about Seaton's representation. The district court advised Howard that he could ask to proceed *pro se*, hire a new attorney, or identify a legal conflict with Seaton. Howard alleged that agents had planted drugs at Lyons's house and that Seaton refused to question witnesses to develop that defense. Seaton responded that she lacked evidence to substantiate the defense. After the district court ruled that Seaton had made a tactical decision that did not warrant substituting defense counsel, Howard elected to proceed with Seaton as counsel.

Howard testified that he had been living at a hotel when he received Hester's text requesting drugs. Howard denied transporting a camouflage blanket to Hester's house and described their relationship as rocky because he once sold Hester a placebo instead of methamphetamine. Howard stated that he consented to a search of Lyons's house under duress and that Investigator Cook had transported a "big 483-gram bag [of methamphetamine] and all that other" from Hester's house in a brown bag and planted it in

Lyons's house. Howard insisted that a news article showing the drugs seized from Hester's and Lyons's houses and a statement from an inmate, Joe Brady, that agents had found the same big bag of methamphetamine at Hester's house established that drugs had been planted at Lyons's house. But Howard admitted to "ha[ving] some half and half mixed stuff"—"about a 28-gram bag in the car"—and having "sold it before."

In her closing argument, Seaton explained why Howard's testimony supported an acquittal. Seaton questioned "whether or not the government c[ould] prove beyond a reasonable doubt that those substances were possessed and handled by Mr. Howard." She recounted that Howard was "very specific" in "blam[ing] . . . Investigator Cook" instead of Agent Llorens. Seaton acknowledged that Howard's story "sound[ed] outlandish" and that Investigator Cook "probably didn't" plant evidence because everyone present "would like to think he wouldn't do it." But Seaton offered "another explanation . . . that Cornelius was a guest in the home for a couple of weeks" and "had access to the room in the home," although he was unavailable to testify because "he died in November." Seaton also acknowledged that Howard admitted to possessing methamphetamine and was culpable "whether or not he knew, you know, how many grams it weighed." Even so, Seaton argued, the government had not proved that Howard possessed more than 500 grams of methamphetamine. She "encourage[d] [the jury] to go back and actually look at th[e] two reports" from the Florida Department of Law Enforcement and the Drug Enforcement Administration and

"look at the[ir] [different] amounts." She told jurors that, "if there is a reasonable doubt in your mind, then you have to be committed to that position when you go back there" and "to stand by your, no pun intended, convictions."

The jury found Howard guilty of the drug offense, 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and it found him not guilty of the firearm offense, 18 U.S.C. §§ 922(g)(1), 924(a)(2). Before sentencing, the district court appointed Richard Greenberg to represent Howard.

Howard moved for a new trial on the ground that Seaton was ineffective. Howard amended his motion and argued that Seaton should have refrained from admitting Howard was guilty of a drug offense, see McCoy v. Louisiana, 138 S.Ct. 1500 (2018), and should have developed a defense that officers planted the drugs, see Strickland v. Washington, 466 U.S. 668 (1984). The government responded that Seaton made reasonable strategic decisions and that her performance did not prejudice Howard because he admitted possessing methamphetamine.

The district court held a two-part evidentiary hearing. Howard testified that he spoke with Seaton twice in person for 30 to 45 minutes and twice on the telephone briefly, but when questioned by the district court, Howard admitted to a third telephone conversation with Seaton and to receiving information that her assistant delivered to him. Howard stated he was arrested the same day as Brady and that they "discussed what was found and the things that police were doing during that search." But Howard testified that Seaton failed to contact Brady and ignored Howard's request that

she interview Miles Tanner Burges as a potential witness. Howard proffered that Burges would have testified he was arrested at Hester's house and saw agents retain some of the methamphetamine seized and that Burges could identify the drugs planted at Lyons's house. Howard testified that he never permitted Seaton to concede he had a small amount of methamphetamine, but he also acknowledged that he confessed to committing a drug crime during his trial testimony. Howard also acknowledged that Seaton obtained records of the seizures at Lyons's and Hester's houses, but they interpreted those records differently.

The district court rejected Howard's argument that Seaton violated his right to maintain innocence. The district court ruled that Seaton reasonably conceded that Howard had possessed a small amount of methamphetamine and that Seaton's closing statements were consistent with Howard's defense that he possessed a small quantity of drugs but was not responsible for the large quantity discovered in Lyons's house.

After Howard elected to litigate his claim of ineffective assistance on direct appeal instead of in a postconviction proceeding, Seaton testified. She stated that she encouraged Howard's attorney in his state prosecution to depose officers with her present and that the attorney never stated the drugs had been planted in Lyons's house. Seaton recounted reviewing with Howard the records of the search of Hester's house and the news article of the drug seizures at Hester's and Lyons's houses. Seaton testified that, beginning with her opening statement, she developed the theory that

Howard possessed drugs, but not the 500 grams necessary to trigger a statutory mandatory minimum sentence. Seaton testified that Howard become "increasingly agitated" during trial and "extremely irate" at the conclusion of the officers' testimony. Before the government rested, Howard asked her to argue exclusively that officers planted the drugs, but she refused to do so due to a lack of evidence. She also became concerned that Howard might perjure himself. Howard never told Seaton that Investigator Cook planted the drugs or that he saw anyone take a bag into his house that he believed contained drugs. Seaton decided that the information Brady might provide was irrelevant because he was arrested before Howard.

The district court denied Howard's motion for a new trial and sentenced him to 120 months of imprisonment. The district court credited Seaton's testimony and ruled that Howard had not been prejudiced by Seaton's refusal to argue that officers planted drugs in Lyons's house.

We review the denial of Howard's motion for a new trial for abuse of discretion. *United States v. Tokars*, 95 F.3d 1520, 1531 (11th Cir. 1996). Ordinarily we do not entertain a claim of ineffective assistance of counsel on direct appeal, but we will consider such a claim where the defendant develops a factual record in the district court. *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). Howard's argument that Seaton was ineffective presents a mixed question of law and fact that we review *de novo. Id.*

Under S*trickland*, Howard must satisfy a two-part test to prove that Seaton was ineffective. 466 U.S. at 687. First, Howard must prove that Seaton made errors so serious that she failed to function as the counsel guaranteed by the Sixth Amendment. *Id.* Seaton enjoys the strong presumption that her conduct fell within the range of reasonable professional assistance. *Id.* at 689. And Seaton's strategic decisions amount to deficient performance only if no competent attorney would have made the same decisions. *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Second, Howard also must prove that there is a reasonable probability that, but for Seaton's errors, the outcome at trial would have been different. *Strickland*, 668 U.S. at 694.

Howard failed to prove that Seaton was deficient or that he was prejudiced by her refusal to accuse officers of planting drugs in his house. The district court was entitled to credit Seaton's testimony that Howard never mentioned drug planting to counsel representing him in a state prosecution, that he provided Seaton no specific information of drug planting to investigate, and that she unearthed no evidence of drug planting despite reviewing police records and news accounts of the drug seizures. *See Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008) ("We allot 'substantial deference to the factfinder . . . in reaching credibility determinations with respect to witness testimony.'"). Seaton was not required to act on Howard's speculation that Brady and Burges would testify that officers planted the drugs. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("claims [that] are merely

'conclusory allegations unsupported by specifics'" do not support a claim of ineffective assistance of counsel). Seaton reasonably rejected Howard's requests that she contact Brady and Burges because both men had been arrested and did not observe the officers at Lyons's house. *See Adams*, 709 F.2d at 1445 ("[A] strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternatives."). Seaton also exercised reasonable professional judgment in refusing to question officers about planting drugs without any evidence to support that defense. And without testimony or an affidavit from Brady or Burges, Howard could not prove that Seaton's refusal to investigate or subpoena the two men prejudiced the outcome of his trial, *see Strickland,* 668 U.S. at 694.

Howard also failed to prove that Seaton's closing argument was deficient or prejudiced his defense. Seaton earned credibility with the jury by discounting Howard's statements about drug planting as "outlandish," acknowledging that he had admitted to possessing some methamphetamine, and attributing the large quantity of drugs to Lyons's boyfriend. Those statements gave the jury a plausible reason to attribute a small amount of methamphetamine to Howard and created the potential for him to avoid a lengthy statutory mandatory sentence. Howard cannot establish that Seaton's closing argument "reflect[s] less than reasoned professional judgment." *See Adams*, 709 F.2d at 1445. And Howard failed to prove that he was prejudiced by Seaton's strategic decision to reject Howard's theory that officers planted the drugs and to

21-12526                Opinion of the Court                11

present a more plausible argument in his defense. *See Strickland,* 668 U.S. at 694.

We **AFFIRM** the denial of Howard's motion for a new trial.