Kenneth GRIFFIN, Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, Florida Department of Corrections, Respondent.

Civ. A. No. 84–185–CIV–J–12.

United States District Court, M.D. Florida, Jacksonville Division.

March 21, 1984.

John D. Middleton, Gainesville, Fla., Robert P. LoBue, New York City, for petitioner.

Wallace Allbritton, Asst. Atty. Gen., Tallahassee, Fla., for respondent.

## OPINION AND ORDER DENYING APPLICATION FOR A STAY OF EXECUTION AND PETITION FOR WRIT OF HABEAS CORPUS

MELTON, District Judge.

This cause is before the Court on Application for a Stay of Execution ("Application") and Petition for Writ of Habeas Corpus ("Petition"), filed herein on March 16, 1984, by KENNETH GRIFFIN, a death row inmate at Florida State Prison. In the Petition, petitioner also requests that this Court grant him an evidentiary hearing "to permit further exploration of petitioner's claims." On March 19, 1984, at 8:45 a.m., respondent filed Response to Application for Stay of Execution and Petition for Writ of Habeas Corpus. At 10:00 a.m. on that same date, this Court heard oral arguments on all of the grounds raised in the Application and the Petition.

On March 19, 1984, this Court entered Order Granting Temporary Stay of Execution. In that order, the Court temporarily stayed petitioner's execution previously set for 7:00 a.m., Tuesday, March 20, 1984, until 7:00 a.m., Friday, March 23, 1984, so that the undersigned could properly review the record in this cause prior to entry of this opinion and to provide sufficient time for an appeal by either party to the Eleventh Circuit Court of Appeals.

After careful review of the entire record and after hearing argument by counsel for the respective parties, the Court is of the opinion that the Application for a Stay of Execution should be denied to the extent that it seeks a stay beyond the seventy-two (72) hour temporary stay previously granted by this Court. The Court is also of the opinion that the Petition for Writ of Habeas Corpus should be denied, as well as petitioner's request for an evidentiary hearing.

## PROCEDURAL HISTORY

On October 30, 1978, petitioner was charged by indictment with two counts of murder in the first degree for the deaths of Glen Cavell Lundgren and Keith Kirchaine in Bradford County, Florida. On March 15, 1979, petitioner was convicted of first degree murder on both counts and on the following day the jury recommended a sentence of death. Agreeing with the jury's recommendation, the trial judge imposed the death sentence on April 19, 1979. The Supreme Court of Florida affirmed petitioner's judgment and sentence in *Griffin v. State*, 414 So.2d 1025 (Fla.1982) ("*Griffin I*").

Pursuant to Fla.R.Crim.P. 3.850, petitioner filed Motion to Vacate, Set Aside or Correct Conviction and Sentence on April 20, 1983. On February 21, 1984, the Governor of Florida signed a death warrant ordering petitioner's execution during the week of March 19, 1984. The execution was subsequently scheduled for 7:00 a.m. on March 20, 1984. Counsel for petitioner filed an Amended Motion to Vacate, Set Aside or Correct Conviction and Sentence and Order a New Trial ("Amended Motion") on March 6, 1984, and further supplemented that motion on March 9, 1984.

The trial court held a hearing on the Amended Motion on March 9, 1984. Following oral argument, the trial court granted an evidentiary hearing on petitioner's claim of ineffective assistance of trial counsel, and denied the remainder of petitioner's claims as barred by procedural default. *See* Transcript of Proceedings taken on March 9, 1984 at 180–84 ("3.850 Hearing I"). The trial court also denied petitioner's request for a stay of execution. On March 13, 1984, the trial court held an evidentiary hearing on petitioner's claim of ineffective assistance of trial counsel and entered an eighteen-page (18) opinion denying that claim.

On March 14, 1984, petitioner filed with the Supreme Court of Florida a petition for a state writ of habeas corpus ("State Petition"), an application for a stay of execution, and an appeal from the trial court's order denying the Amended Motion. On March 16, 1984, the Supreme Court of Florida affirmed the trial court's order and denied both the State Petition and petitioner's application for a stay of execution. Petitioner then filed Application for a Stay of Execution and Petition for Writ of Habeas Corpus with this Court on March 16, 1984.

## GROUNDS FOR RELIEF

### Point I: Ineffective Assistance of Counsel

Petitioner's first ground for habeas corpus relief is that Leonard E. Ireland, Jr. ("Ireland"), the Special Public Defender assigned to represent petitioner, did not provide even minimally adequate representation at pretrial, trial, and penalty proceedings and on appeal, thus depriving petitioner of effective assistance of counsel in violation of the sixth and fourteenth amendments to the United States Constitution. Because petitioner has exhausted his state remedies, this issue is properly before this Court.

■■■ Under the sixth amendment, a criminal defendant is entitled to an attorney "reasonably likely to render *and rendering* reasonably effective assistance." *Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir.1974), quoting *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir.1960), *adhered to in pertinent part on rehearing en banc*, 289 F.2d 928 (5th Cir.), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) (emphasis by *MacKenna* panel). Whether counsel rendered reasonably effective assistance must be based on the totality of the circumstances in the entire record. *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir.1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). Further, in order to prevail on a claim of ineffective assistance of counsel, petitioner "must prove his entitlement to relief by a preponderance of the evidence." *Wash-ington v. Strickland*, 693 F.2d 1243, 1250 (5th Cir.1982) (Unit B) (en banc), *cert. granted*, —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983).

In contending that he was denied effective assistance of counsel, petitioner recites the following seven areas of alleged deficiencies in Ireland's performance:

1. Appointed counsel had insufficient experience and knowledge.

2. At the pretrial stage, appointed counsel failed to spend the requisite time and effort to develop petitioner's case; spent virtually no time with his client; relegated the principal responsibility for petitioner's defense to Joseph Forbes ("Forbes"), a recent law school graduate; provided Forbes no supervision in the handling of petitioner's defense; failed to follow leads that would have led to the discovery of exculpatory and mitigating evidence; failed to question potential witnesses; and failed to attend fourteen (14) pretrial depositions taken by counsel for codefendant Robert John Hinson and by the state.

3. At voir dire, appointed counsel failed to challenge eight of twelve jurors and failed to protect petitioner's rights under *Witherspoon*.

4. At voir dire and trial, appointed counsel failed to object to five references by the prosecutor to the victims' race.

5. Appointed counsel failed to request jury instructions and failed to object to erroneous instructions.

6. At the penalty stage, appointed counsel failed to present a case in mitigation.

7. On appeal, appointed counsel failed to raise legal issues which could have secured the reversal of petitioner's conviction.

The Court shall consider petitioner's arguments *seriatim*.

■■■ **Inexperience of Defense Counsel.** Petitioner first contends that Ireland had little experience in capital cases. At the time of the trial in 1979, Ireland had been a member of the Florida Bar for eleven and one-half years and was a partner in the

Gainesville, Florida law firm of Clayton, Johnston, Quincy, Ireland, Felder and Gadd. *See* Testimony and Proceedings taken on March 13, 1984, at 113, 175 ("3.850 Hearing II"); Order Denying Amended Motion to Vacate, Set Aside or Correct Conviction and Sentence and Order a New Trial at 7 ("3.850 Order"). Petitioner predicates his argument that Ireland had little experience in capital cases on the fact that prior to consenting to represent petitioner, Ireland had represented a defendant in only one capital case through the sentencing phase, with his client receiving a life sentence. *See* 3.850 Hearing II at 113–14. This Court is unwilling to find that Ireland was reasonably unlikely to render reasonably effective assistance of counsel on the mere fact that Ireland had represented a defendant in only one capital case prior to petitioner's trial.

**Pretrial Stage.** Petitioner contends next that Ireland failed to conduct adequate pretrial investigation, citing seven areas of alleged deficiencies: Ireland failed to spend the requisite time and effort to develop petitioner's case; Ireland spent virtually no time with petitioner; Ireland relegated the principal responsibility for petitioner's defense to Forbes; Ireland provided Forbes with no supervision in the handling of petitioner's defense; Ireland failed to follow leads that would have led to the discovery of exculpatory and mitigating evidence; Ireland failed to question potential witnesses; and Ireland failed to attend fourteen (14) pretrial depositions taken by Michael Bryant, counsel for codefendant Robert John Hinson ("Hinson"), and by the state.

■ Petitioner first contends that Ireland did not spend the requisite time to develop petitioner's case. Petitioner supports his contention by contrasting the number of out-of-court hours on the fee application filed by Michael Bryant with the number of out-of-court hours recorded on the fee application filed by Ireland. *See* 3.850 Hearing II at 19–23, 133–42; Petition at 8–9. Both Ireland and Michael Bryant, however, testified that the number of hours recorded on the fee applications was not an accurate representation of the actual number of hours spent on the case. *See* 3.850 Hearing II at 21, 137, 140. Ireland further testified that, as to the accuracy of the number of hours recorded on the fee application, "[i]t didn't make any difference, [and] that once you get past a certain number of hours, whenever you filled in one of these forms, you get paid the same amount of money." 3.850 Hearing II at 207. Upon a thorough review of the entire record, the Court is of the opinion that Ireland did spend sufficient time to develop an adequate defense.

Second, petitioner argues that Ireland spent virtually no time with petitioner. Petitioner testified that the first and only time that he met Ireland was two weeks before the trial. *See* 3.850 Hearing II at 217–18. Contrary to petitioner's testimony, Ireland testified at the 3.850 hearing that he met petitioner "at least on three occasions." 3.850 Hearing II at 194. In its order denying the Rule 3.850 motion, the trial court expressly rejected petitioner's testimony "as untruthful" that Ireland and Forbes did not meet with petitioner until two weeks prior to the trial. 3.850 Order at 11.

■ The number and length of conferences between client and attorney, however, are not determinative of the question before the Court. *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir.1980) ("[B]revity of time spent in consultation, without more, does not establish that counsel was ineffective."). The focus of this Court's inquiry should therefore be on whether Ireland had "devoted sufficient time to insure an adequate defense and to become thoroughly familiar with the facts of the case and the law applicable to the case." *Id.* The record herein reflects that Ireland had spent sufficient time with petitioner. Ireland testified at the 3.850 hearing that "with the time that I interviewed Mr. Griffin, there was plenty of time, with the information that I got from him, there was time to do anything I could have done with it." 3.850 Hearing II at 129. Ireland fur-

ther testified that, after the first interview with petitioner,

> We had pretty much hit the bottom of the well, if you want to use that, the first time we talked, because Mr. Griffin's position has been, and I understand still is, that he knows nothing about what happened and it happened three years before that time, and it is very difficult to give any help, when you don't know where you were, what was happening or what happened or why somebody would be telling these stories about you.

3.850 Hearing II at 195. Consequently, petitioner was not denied effective assistance of counsel because it is clear from the record that Ireland spent sufficient time with petitioner for the development of an adequate defense.

■ Petitioner next argues that Ireland relegated the principal responsibility for petitioner's defense to Forbes and that Ireland provided Forbes with no supervision. The testimony of Forbes at the 3.850 hearing controverts petitioner's argument. Forbes testified that he was largely "responsible for factual—leg-work type investigation to try and find further or to verify facts that we thought existed or to find out if, in fact, they did." 3.850 Hearing II at 82. Forbes also testified that, after investigating certain matters, he would take that information back and discuss its relevance with Ireland. *See id.* at 107. Finally, Forbes testified that it was Ireland's, not Forbes', responsibility to make trial and tactical decisions. *Id.* The Court therefore finds that Ireland did not relegate principal responsibility for the defense to Forbes and that Ireland did not fail to supervise Forbes sufficiently.

■ Petitioner also argues that Ireland did not conduct a substantial pretrial investigation, in that he failed to follow leads that would have led to discovery of exculpatory and mitigating evidence, in

that he failed to question potential witnesses, and in that he failed to appear for fourteen (14) depositions scheduled by the state or by Michael Bryant, counsel for codefendant Hinson. In order for this Court to find that petitioner was denied effective assistance of counsel in the pretrial investigation stage, the Court must find that trial counsel failed to "conduct a reasonable amount of pretrial investigation." *Washington v. Strickland,* 693 F.2d at 1251. Whether the amount of pretrial investigation was reasonable "depend[s] upon a variety of factors including the number of issues in the case, the relative complexity of those issues, the strength of the government's case, and the overall strategy of the trial counsel." *Id.* The reasonableness of counsel's efforts should not be determined "from the omniscient perspective of hindsight." *Id.* Under this standard and after careful consideration of the record herein, this Court cannot accept petitioner's conclusion that he was denied his right to effective assistance of counsel because of inadequate pretrial investigation by defense counsel.

The Court is first of the opinion that petitioner's arguments that Ireland failed to follow up leads that would have led to discovery of exculpatory evidence and failed to question potential witnesses are without merit. The sufficiency of Ireland's pretrial investigation, including his interviewing of potential witnesses, which investigation is treated in detail in the 3.850 order, is amply supported by the testimony in the 3.850 hearing and by the trial transcript. The record shows not only that Ireland himself conducted a reasonable amount of pretrial investigation but also that Ireland supplemented his own research with investigative reports from Forbes and Rick Fisher ("Fisher"). Ireland used Forbes, Ireland's associate at the time, for "factual investigation." 3.850 Hearing II at 142. Forbes came to this case with a significant amount of investigative experience, having been a police officer

and police sergeant for three years, a special investigator with the State of Florida Auditor General, an intern with the state attorney's office, and an assistant state attorney prosecuting felony cases. *See id.* at 106–07. Ireland also received investigative reports from Fisher. *See id.* at 45, 61–62, 177. The record therefore fails to support petitioner's contention that Ireland failed to follow up pretrial investigatory leads or failed to question potential witnesses.

■ Finally, petitioner contends that he was denied effective assistance of counsel because Ireland failed to appear at fourteen depositions. Ireland was not even noticed for seven depositions scheduled on December 27, 1978. *See id.* at 52–53, 120. As to the other depositions which he did not attend, Ireland testified that he decided not to attend the depositions because of his belief that petitioner's interests were being adequately represented by Michael Bryant, counsel for petitioner's codefendant Hinson. *See id.* at 124–25. Ireland obtained and read copies of all depositions which he did not attend. *See id.* at 120, 177.

Two of the depositions that Ireland did not attend were of witnesses whose testimony Forbes stated was crucial: Willie James Bryant and Alex Henry ("Henry"). *See id.* at 81. Ireland offered sound reasons for not redeposing both Willie Bryant and Henry. Ireland did not redepose Willie Bryant because Ireland had the deposition; talked with Michael Bryant, counsel for codefendant Hinson; had the benefit of investigations by both Fisher and Forbes; and had a copy of a lengthy statement by Willie Bryant. *See id.* at 120, 177. Ireland did not redepose Henry because Ireland had the deposition, a background done by Fisher, and a background done by Forbes. *See id.* at 126. In addition, Ireland stated that he did not further depose Henry because he did not want to afford Henry an opportunity to rehabilitate statements in Henry's prior deposition, which statements Ireland felt were subject to impeachment. *See id.* at 126. At trial, Ireland used Henry's deposition for impeachment. *See* Trial Transcript ("TT") at 533–36, 551.

■ **Voir Dire.** Petitioner alleges that Ireland committed trial errors when Ireland failed to object to the exclusion of venireman Fayson and when Ireland failed to challenge for cause eight jurors. Petitioner claims that the exclusion of this venireman for cause was in violation of the mandate of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Petitioner's claim is without merit for two reasons. First, Ireland may have made a tactical decision not to object to the exclusion of venireman Fayson because he did not want him on the jury for some reason other than the *Witherspoon* issue. Second, even if Ireland had objected, his objection would not have been well taken. *See* 3.850 Order at 12. Under *Witherspoon,* and its progeny, a venireman may be struck for cause when he is "irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." *Burns v. Estelle,* 592 F.2d 1297, 1299 (5th Cir.1979), quoting *Witherspoon,* 391 U.S. at 522, n. 20, 88 S.Ct. at 1777 n. 20. The court in *Witherspoon* further explained that a venireman may be excluded if he makes it "unmistakably clear" that his attitude toward the death penalty would prevent him "from making an impartial decision as to the defendant's *guilt." Id.* (emphasis in original). A review of the voir dire examination of venireman Fayson indicates clearly that he could not return a verdict of guilty, either in this case or in any capital case. *See* TT at 167–71; *Griffin v. Florida,* and *Griffin v. Wainwright,* 447 So.2d 875 at 876 (Fla.1984) ("*Griffin II* "). Consequently, the exclusion of Mr. Fayson for cause was entirely proper. *See Williams v. Maggio,* 679 F.2d

381, 384–86 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983).

■■ Petitioner also argues that Ireland committed trial error in failing to challenge for cause eight jurors. Petitioner claims that the eight jurors had undue familiarity with the facts of the case, had ties with law enforcement or correctional personnel, or had some other reason to be biased against petitioner. As with Ireland's purported failure to object to the exclusion of venireman Fayson, this Court is of opinion that petitioner's claim is without merit for two reasons. First, Ireland made the tactical decision not to challenge for cause the eight jurors because he had other reasons for wanting the eight jurors on the jury. Ireland testified that he used "many subjective factors in picking a jury." 3.850 Hearing II at 188. Ireland stated under oath that the existence of some subjective factors might even dictate keeping a juror although he knew a witness who might be a deputy sheriff. *See id.* at 188–89. Ireland testified that:

I made the decision that there was a juror I could live with on that case and hopefully would be receptive to my type of presentation that we were going to make, and even to the point of asking Mr. Griffin if there were any people that he wanted to get off of the panel, and I think he and I made a joint decision on a couple of occasions to remove some people.

Anyway, I left the folks on there that I felt would be receptive to our position.

*Id.* at 189.

Second, even if Ireland had challenged the eight jurors for cause, his challenges would not have been well taken. In the 3.850 order, the trial court stated that "not a single recitation in the Amended Motion or Memorandum nor in the record itself could serve as a proper basis for challenge for cause. Had such a challenge been made on the record, it would have been denied." 3.850 Order at 12. Therefore, the failure of Ireland to challenge the eight jurors for cause was not a trial error and was entirely proper under the circumstances.

**Remarks by Prosecutor.** Petitioner contends that another deficiency in Ireland's performance was his failure to object to allegedly racial remarks by the prosecutor and his failure to object to an allegedly misleading remark concerning the fate of petitioner's codefendant Hinson. Petitioner points to five allegedly racial remarks by the prosecutor. First, the prosecutor in voir dire stated:

It's alleged that this case involves a shooting that occurred at the Zippy Mart ..., where a person, *white male boy* about the age of 19, named Glen Lundgren, and another *white male boy* by the name of Keith Kirchaine were killed during what is alleged to be the commission of a robbery

. . . .

Is there anyone ... that now think[s] they may know something about the case?

TT at 26 (emphasis added).

■■ Later in voir dire, the prosecutor asked the prospective jurors, "Did you know Keith Kirchaine, 16-year-old *white male* at school here?" *Id.* at 135–36 (emphasis added). In the prosecutor's opening statement, he told the jury that Willie James Bryant's testimony is and has been that "Griffin ... got a young *white boy* about 16 years old by the arm." *Id.* at 226 (emphasis added). Later in the opening statement, the prosecutor stated that "Griffin's statement to Alex Henry was that [Willie James Bryant and Griffin] ... [t]ook the other younger *white boy,* put him in a car, [and] took him out ... to a wooded area." *Id.* at 230 (emphasis added). Finally, in examining Willie James

Bryant, the prosecutor engaged in the following colloquy:

Q [prosecutor] All right. Where did Mr. Griffin walk the boy to?

A [Willie Bryant] To my car.

Q Had you ever seen that boy before?

A No, sir.

Q Can you estimate at this time what his age would have been?

A No, sir, I don't know.

Q Did he appear young or old or—

A He was young.

Q Let me show you this photograph marked State's Exhibit 14, and tell me if you can recognize or identify the person portrayed there.

A This looked like him. I don't know.

Q Looks like the boy?

A Yes, sir.

Q All right. How many—well, excuse me. Was this the—was there only one boy that Griffin and Hinson took out of the store?

A That is all I seen, one. Yes, sir.

Q Okay. And *was that a white male or a black male?*

A White.

Q Okay. What did that—when they got to your car, what happened?

*Id.* at 458 (emphasis added).

After a careful review of the entire record, the Court is of the opinion that the prosecutor's five references to the victims as "white ... boy[s]" or "white male[s]" in an eight-hundred and forty-four page trial transcript were neither gratuitous nor racially prejudicial. The Court finds that the prosecutor made the references to the race of the victim solely to identify the victim. This interpretation of the record is corroborated by the fact that neither Ireland nor the trial judge thought at the time of the remarks that racial prejudice was being brought into the trial by the prosecutor. *See* 3.850 Hearing II at 186; 3.850 Order at 13.

Ireland further testified as follows:

Q [prosecutor] Now, based on your trial experience, to some degree over that period of time, had you felt that the prose-

cutor's remarks in those very few limited pages, out of a multi-hundred page transcript, had been for the purpose of eliciting racial prejudice, would you have brought it to the attention of the Court?

A [Ireland] Yes, sir.

3.850 Hearing at 186.

Consequently, Ireland did not render ineffective assistance of counsel when he failed to object to the prosecutor's remarks. *See Palmes v. Wainwright,* No. 82–583, slip op. at 22 (M.D.Fla. Aug. 11, 1983) (*"Palmes I"*) ("Because these prosecution comments were not objectionable, [the trial attorney's] failure to object cannot be deemed a deficiency."), *aff'd,* 725 F.2d 1511 (11th Cir.1984).

Petitioner also contends that Ireland failed to object to an allegedly misleading remark by the prosecutor about the fate of petitioner's codefendant Hinson. In his summation of the penalty phase of the trial, the prosecutor made the following argument:

Now, folks, again, you can not do justice between these three co-perpetrators. You may believe that they all should be electrocuted and maybe they should. But, you see, you are not here to decide that. The responsibility and the weight of giving immunity to one defendant to testify against the other is mine. You can not—that is not your responsibility, there is nothing you can really do about that. You are not asked to make justice. You are not asked to decide whether Hinson should get the death penalty or going to get the death penalty if this man gets the death penalty. That is not your duty, that is some subsequent jurors' duty or my responsibility, but it's not yours.

You can not render justice to the whole system, you can only do your part. Your part is to decide one case.

TT at 816–17. Petitioner argues that "the prosecutor not only concealed his intentions concerning Hinson but affirmatively misled the jury as to Hinson's fate." Memorandum of Law in Support of Petition for a

Writ of Habeas Corpus ("Memorandum") at 67.

Upon an independent review of the record, the Court finds that Ireland did not render ineffective assistance of counsel when he failed to object to the prosecutor's arguments, because the record reveals first that the prosecutor at the time of the argument had not yet formed his intentions concerning Hinson and second that the language of the argument on its face could not have misled the jury as to Hinson's fate. At the 3.850 hearing, the prosecutor, an officer of the court, stated that "[t]here was no decision as to what to do with that case, the Hinson case, whether Hinson would be tried or what would be done with him until after the end of the Griffin trial." 3.850 Hearing I at 166. The prosecutor, therefore, did not conceal his intentions concerning Hinson because the decision of what to do regarding Hinson had not yet been made. Second, the language of the argument is on its face not misleading. The prosecutor in his argument presented two alternatives: Hinson would be dealt with either by a subsequent jury *or* by the prosecutor. *See* TT at 817. The prosecutor's statement accurately presented Hinson's situation at the time of the prosecutor's argument, in that no decision as to what to do with the Hinson case was made until after the prosecutor made his argument. Because the record reveals that the prosecutor neither concealed his intentions from the jury nor misled the jury as to Hinson's fate, this Court finds that Ireland's failure to object to the prosecutor's argument did not deny petitioner reasonably effective assistance of counsel.

**Jury Instructions.** Petitioner first argues that trial counsel should be held to be ineffective for not requesting specific jury instructions. Petitioner does not allege under this claim which, if any, instructions should have been requested, and petitioner cites no authority holding a defendant's attorney ineffective for failing to request specific instructions. The record indicates that defense counsel in this case reviewed the instructions thoroughly prior to giving his final agreement to the charges. *See id.*

at 719. Petitioner does not allege, nor does this Court find, any particular prejudice resulting from counsel's failure to request specific instructions.

 Petitioner also argues that counsel twice permitted the trial court to instruct the jury incorrectly on Florida felony murder. Although this is true, the Supreme Court of Florida found that this omission was immediately and properly corrected by the trial judge upon discovery of the omission, in accordance with the Florida Rules of Criminal Procedure. *See Griffin* I at 1028. Petitioner cites no authority in his Memorandum indicating that the Supreme Court's decision is incorrect, and this Court defers to the Supreme Court's construction of Florida law. *See Wainwright v. Goode,* — U.S. ——, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983).

 Petitioner next complains that counsel failed to object to the trial court's failure to charge the jury concerning second degree felony murder. This "failure" was not error because defense counsel could have reasonably believed, based on the evidence adduced at trial, that the evidence excluded any possibility that petitioner's participation in the crime "was limited to that of an accessory before the fact." *State v. Jefferson,* 347 So.2d 427, 429 (Fla. 1977). Indeed, *Jefferson* and other decisional law available at the time would indicate to a reasonably effective attorney that such a charge was unavailable in petitioner's case because "[t]he statutory scheme [then in effect did] not allow for the conviction of second degree felony murder of either the one who kills or his co-felons who are present." *Id.* A plethora of evidence at trial indicated that petitioner was the triggerman, and most certainly demonstrated that petitioner was present when the murders were committed. *See, e.g.,* TT at 461–65.

In addition, petitioner's assertions in his Memorandum that the evidence concerning this issue amounts to nothing more than a swearing match between petitioner and Willie Bryant ignore the testimony of Alex

Henry, which clearly indicates that petitioner murdered Lundgren and Kirchaine. *See id.* at 522–23, 525–26, 535. The evidence in this case excludes any reasonable doubt that petitioner participated in any murder other than a felony murder. Therefore, defense counsel cannot be said to be ineffective for failing to request an instruction that would have been denied if requested. *See Griffin* II at 877.

 Petitioner contends that counsel was ineffective in failing to object to the Court's omission of an additional instruction on the presumption of innocence. Although counsel could have requested such an instruction, no prejudice resulted from the Court's omission of this instruction a second time, because unlike the cases cited in petitioner's Memorandum, the jury had already been correctly instructed one time concerning this presumption. Furthermore, in instructing the jury on the felony of robbery, the jury was told to consider that instruction along with the other instructions previously given. *See* TT at 762. Hence, this Court is of the opinion that no prejudice resulted from counsel's failure to request that the instruction on the presumption of innocence be given a second time. *See Corn v. Zant,* 708 F.2d 549, 561 (11th Cir.1983).

 Finally, petitioner attacks counsel's failure to object to the Court's charge on premeditation on Count I of the indictment "when there was insufficient evidence to so charge." Memorandum at 36. Based on this Court's independent review of the entire record, it is clear that a reasonably competent attorney could reasonably believe that more than sufficient evidence existed to charge petitioner with first degree murder in Count I. *See, e.g.,* TT at 459 (petitioner had gun in hand after shooting), 333 (victim had gunshot wound in back of head), 523, 460 (testimony of witness that petitioner admitted shooting Lundgren because he "tried to go for a gun"). The latter statement demonstrates that petitioner had sufficient time to form the necessary intent to kill. *See Sireci v. State,* 399 So.2d 964, 967 (Fla.1981), *cert.*

*denied,* 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). *See also Teffeteller v. State,* 439 So.2d 840, 844 (Fla.1983) (circumstantial evidence may establish premeditation). Finally, when a murder is committed during the course of a robbery, premeditation may be presumed as a matter of law, at least where the evidence shows a defendant participates in the murder, as petitioner did here. *See Enmund v. Florida,* 458 U.S. 782, 797–98, 102 S.Ct. 3368, 3376–3377, 73 L.Ed.2d 1140 (1982); *Adams v. Wainwright,* 709 F.2d 1443 (11th Cir.1983). Defense counsel cannot be faulted here for failing to object to the instruction on premeditation. Based on the foregoing discussion, it is clear that counsel cannot be said to have fallen below the standard of reasonably effective assistance of counsel enunciated in *Washington v. Strickland.*

 **Penalty Stage.** Petitioner next contends that Ireland failed to present a case in mitigation, despite the fact that there were a number of individuals willing and available to provide mitigating testimony as to petitioner's character and background. When counsel's trial strategy, however, does not include mitigating character or background evidence, counsel does not have an absolute duty either to investigate or to present such evidence. *See Washington v. Strickland,* 693 F.2d at 1251; *Stanley v. Zant,* 697 F.2d 955, 964 (11th Cir.1983). In *Stanley,* the Eleventh Circuit dealt at some length with the interplay between character evidence and a claim of ineffective assistance of counsel.

> We cannot say that this evidence would have had no impact on the jury, nor can we say that a tactical decision to use such evidence would have been unreasonable....

> In the present case, counsel's failure to present character evidence at the mitigation phase did not deprive Stanley of his right to reasonable representation....

> ....

> Effective counsel in a given case may consider the introduction of character evidence ... unlikely to make much differ-

ence.... His position in reaching these conclusions is strikingly more advantageous than that of a federal habeas court in speculating post hoc about his conclusions.

*Id.* at 969–70.

In the instant case, trial counsel for petitioner was aware of petitioner's background from meetings with petitioner, *see* 3.850 Hearing at 167, and from the investigation of Forbes, *see id.* at 90–91. Ireland, however, made a stategic decision not to present mitigating character and background testimony. At the 3.850 Hearing, Ireland testified at length on the rationale behind his tactical decision not to present such testimony.

> My decision, in this case, after living with it for a period of time and after seeing the testimony that had been presented, that, once the jury had made the determination that Mr. Griffin was, in fact, guilty, that background of Mr. Griffin, whether it be bad or poor or rotten or how grevious a life he may have been brought up in, was not going to make a difference to [the jury]....
>
> ....
>
> Once they made the determination that he, in fact, had killed two boys, that wasn't going to make any difference.
>
> The only place I had to go with that was, and it was in the record, that Mr. Griffin was a good inmate, when he has been in the prison system, that he hadn't given any problems and that he was not going to give any problem out there if they voted for the life sentence.
>
> And that, if he got out of the prison system, which is what people up here are concerned about because they live here every day, if he ever got out of the system, he is not going to harm anybody else.
>
> So, that was my decision and I think that, to have come up with a sympathy type argument, saying that:
>
> "Unfortunately, because he had such a poor life or bad life, that you don't vote for the death penalty."

> Now, I felt that that would have just taken credibility away from any case that we had.

*Id.* at 184–85.

Later in the 3.850 Hearing, Ireland offered further testimony as to his reasons for not offering mitigating character and background testimony.

> I felt at that point that, with the type of crime that was being tried ... that the jury, who had convicted Mr. Griffin on that, that they weren't going to be impressed at all with his background unless there was some mental instability there.
>
> The main thing that they were concerned about is what has happened to this community and what was going to happen to them again when they go out again.
>
> I was trying to present something to them to say, "Okay, here is a man who had been in the prison system and he hadn't caused any problem while he was in there and hasn't since, to my knowledge, and, you know, why give him the death penalty.["]

*Id.* at 199.

■■■ Ireland's decision not to put on any mitigating character or background evidence was obviously strategic. Therefore, "counsel will not be regarded as constitutionally deficient merely because of tactical decisions. Even where an attorney's strategy may appear wrong in retrospect, a finding of constitutionally ineffective representation is not automatically mandated." *Ford v. Strickland,* 696 F.2d 804, 820 (11th Cir.) (en banc) (citations omitted), *cert. denied,* ⸺ U.S. ⸺, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). Consequently, this Court finds after a thorough review of the record that Ireland's decision not to offer mitigating character and background testimony was a reasonable tactical decision and that petitioner was therefore not denied reasonably effective assistance of counsel.

After a review of the entire record of the Rule 3.850 proceedings, this Court is of the opinion that petitioner received a full, fair and adequate hearing before the trial judge

in this case.[1] This Court is nonetheless basing its determination on its own independent evaluation of the entire proceedings.

**Ineffective Assistance of Appellate Counsel.** Petitioner asserts that appellate counsel was ineffective for failing to raise the following three claims on direct appeal:

1. Griffin was denied his right to an impartial jury (Point II, Memorandum).

2. Trial counsel failed to object to, and appeal from, the unconstitutional jury instruction (Point III, Memorandum).

3. Trial counsel failed to object to, and appeal from, the prejudicial misconduct of the prosecutor (Point IV, Memorandum).

Because petitioner claims that the issues not raised by his appellate counsel were of substantial merit, this Court must "examine the alleged trial errors to see if they contain sufficient merit ... that his appellate counsel can be faulted for not having raised them." *Alvord v. Wainwright,* 725 F.2d 1282 at 1291 (11th Cir.1984), quoting *Hooks v. Roberts,* 480 F.2d 1196, 1197 (5th Cir.1973).

As to petitioner's first claim, this Court has already indicated that petitioner's argument in this regard is without merit. *See also Griffin* II at 876. Therefore, appellate "counsel need not brief issues reasonably considered to be without merit." *Alvord,* at 1291.

Petitioner's second claim has also been found to be without merit elsewhere in this opinion. Moreover, to the extent petitioner attacks his appellate counsel for failing to argue that the trial court erred in failing to instruct the jury on second degree murder, that issue was raised before the Supreme Court of Florida. *See* Main Brief of Appellant Kenneth Griffin on Appeal from Circuit Court of Bradford County at 13–14

("Main Brief"); *Griffin* II at 877. The same is true of the "undue emphasis" argument raised at pages 49–50 of the Memorandum; *see also* Main Brief at 8–9, 11; the presumption of innocence instruction, *see* Memorandum at 55–62; Main Brief at 10–12; and the initial failure of the trial judge to instruct on the essential elements of robbery, *see* Memorandum at 55–56; Main Brief at 5–7. Thus, defense counsel was under no obligation to brief a meritless claim.

The third claim that petitioner raises involves counsel's failure to object to, or raise on direct appeal, the allegedly improper remarks of the prosecutor. This Court has decided elsewhere in this opinion that this claim lacks merit, therefore counsel need not have raised it on appeal. Finally, this is not a case in which it can be seriously alleged that counsel did not function as an advocate on behalf of his client. *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967); *Sullivan v. Wainwright,* 695 F.2d 1306, 1309 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983). This case does not even remotely resemble *Mylar v. Alabama,* 671 F.2d 1299, 1302 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983), in which appellate counsel failed to file any brief on appeal. Rather, counsel in this case filed a forty-five page brief on direct appeal raising ten different issues. Moreover, following appellee's Answer Brief on Direct Appeal, appellate counsel filed a twenty-five page reply brief. This Court is of the firm opinion that such advocacy fully meets the requirement of "reasonably effective representation," *Alvord,* at 1291, quoting *Mylar,* 671 F.2d at 1300. Hence, petitioner's claim that he did not receive effective assistance

---

**1.** Although counsel for petitioner claim that they did not have time to adequately prepare for this case, this Court concludes that both the records filed in this cause and counsel's arguments at the 3.850 hearing and before this Court were thoughtful and well-prepared. The Memorandum filed in support of petitioner's eighteen-page Petition is 115 pages long and covers a

wide range of issues in a forceful and organized manner. In addition, petitioner attached to his Petition and Memorandum an Appendix of some 335 pages. Moreover, counsel arguing on behalf of petitioner at the hearing was extremely well-versed in the issues, and was accompanied by competent Florida co-counsel.

of appellate counsel is completely without merit.

**Point II: Denial of Right to Impartial Jury**

Petitioner argues that the exclusion from the jury of one of the prospective jurors was inconsistent with the constitutional requirements for jury selection in capital cases set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Petitioner asserts that various studies demonstrate that such an improper exclusion results in denial of a representative jury. Petitioner's trial counsel, however, did not object to the exclusion of the juror in question at voir dire, nor did petitioner raise this claim on direct appeal to the Supreme Court of Florida. *See* Supreme Court Petition at 5–6.

■ The previous failure to object at trial or raise this issue on direct appeal bars petitioner from raising these issues in a federal habeas corpus proceeding, absent a showing of cause for and prejudice from the procedural default. *See Wainwright v. Sykes*, 433 U.S. 72, 89–91, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977); *Douglas v. Wainwright*, 714 F.2d 1532, 1547–48 (11th Cir.) (failure to raise *Witherspoon* issue on direct appeal), *petition for cert. filed*, 52 U.S.L.W. 3441 (U.S. Dec. 6, 1983) (No. 83–817); *Palmes* I, slip op. at 12–13. Petitioner has demonstrated neither cause for [2] nor prejudice from this default and is therefore barred from raising these issues. *See id.* Furthermore, the finding that petitioner is barred from raising the *Witherspoon* issue at this time renders moot any consideration by this Court of any later studies [3] concerning this issue. *Cf. Dobbert v. Strickland*, 718 F.2d 1518, 1525 (11th Cir.1983) (research study on peremptory challenges completed after petitioner's trial could not obviate petitioner's proce-

dural default on *Witherspoon* issue). Indeed, the procedural default rule would be emasculated if counsel's failure to object with respect to a particular issue could be overcome each time a new study is released. Moreover, petitioner cites no authority from this circuit to support his claim, and ignores the precedent of this circuit which rejected the use of such studies on this very issue. *See Smith v. Balkcom*, 660 F.2d 573, 578 nn. 12, 26 (5th Cir.1981), *modified on other grounds*, 671 F.2d 858 (5th Cir.1982) (Unit B), *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982).

**Point III: Trial Court's Instructions Deprived Petitioner of Constitutional Rights**

■ Petitioner first argues under this section of his Memorandum that the trial judge's instruction on felony murder violated the dictates of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), because the instruction was based on a statute that did not require a specific showing of intent to kill. As with his *Witherspoon* claim, however, petitioner failed to raise this argument on direct appeal and is therefore barred from asserting it at this proceeding, unless he can show cause for and prejudice from the default. To satisfy the "cause" requirement, petitioner argues that this claim was not raised at the time of trial because *Enmund* was not decided until 1982.[4] The Eleventh Circuit, however, has recently rejected a nearly identical "cause" argument with respect to an *Enmund*-type claim in *King v. Strickland*, 714 F.2d 1481, 1491–92 (11th Cir.1983).

■ Even if this Court reached the merits of petitioner's claim, it would be compelled to hold against petitioner, based on *Adams v. Wainwright*, 709 F.2d 1443,

---

**2.** Petitioner's allegations of ineffective assistance of counsel are insufficient to satisfy the "cause" requirement. *Sullivan v. Wainwright*, 695 F.2d 1306, 1311 (11th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983).

**3.** *See* Memorandum at 44–48.

**4.** Although this argument was not specifically raised in his Memorandum or Petition, petitioner raised this point in his brief on appeal to the Supreme Court of Florida following the denial of his 3.850 motion. *See* Brief of Appellant Griffin, on Appeal from Denial of Motion to Vacate at 18.

1446–47 (11th Cir.1983). In that case, the Court stated:

> Although *Enmund* did hold that the death sentence could not be imposed where no intent is shown and the killing occurs during the perpetration of a felony, that case is readily distinguishable. Defendant Earl Enmund in that case was waiting in the getaway car during a planned robbery when one or both of his two co-felons shot and killed two victims who resisted the robbery. The Supreme Court held the death penalty disproportionate to Enmund's culpability, reasoning that he personally "did not kill or attempt to kill" or have "any intention of participating in or facilitating a murder." Here Adams personally killed his victim, savagely beating him to death. Adams acted alone. He is fully culpable for the murder. Under these circumstances, the death penalty is not "grossly disproportionate and excessive."

*Id.* at 1447 (citations omitted).

Petitioner attempts to distinguish *Adams* by asserting that he, petitioner, did not "act alone." *See* Memorandum at 50–51. Although it is true that there were other participants in some of the events during the night of the murders, the testimony of both Willie James Bryant and Alex Henry indicates that petitioner acted alone in the actual killing of Lundgren and Kirchaine. *See* TT at 460, 522–23, 525–26, 535; *Griffin* I at 1027.

More importantly, the Eleventh Circuit recently rejected a similar argument in *Ross v. Hopper*, 716 F.2d 1528 (11th Cir. 1983). The Court in *Ross* emphasized that the United States Supreme Court reversed the Florida Supreme Court's decision in *Enmund* because "the Florida Supreme Court affirmed the death penalty *in the absence of proof* that Enmund killed or attempted to kill, and regardless of whether Enmund intended or contemplated that life would be taken." *Id.* at 1532, quoting

*Enmund*, 458 U.S. at 801, 102 S.Ct. at 3378 (emphasis added by *Ross* panel).

In *Ross*, although no one actually saw the defendant commit the murder, there was sufficient evidence that he was an active participant in the crime to uphold the first degree murder conviction. Like the instant case, at least one witness in *Ross* testified that the defendant stated that he had shot the murder victim. In addition, witnesses in this case and in *Ross* testified that they heard gunshots and saw defendant holding a gun either just before (*Ross*) or after (*Griffin*) the murder. Furthermore, the theory of the state in both cases was that petitioner himself was the triggerman. Finally, as the court in *Ross* pointed out,

> The case is readily distinguishable from *Enmund*, where the evidence supported no more than an inference that at the time of the killing the defendant was seated in a get-away car at the side of the road waiting for the robbers to escape. Here there is sufficient evidence in the record to support a conclusion that Ross contemplated that life would be taken, intended to kill, and actually killed Lieutenant Meredith. Examining the individual culpability of the defendant, as did the Supreme Court in *Enmund*, it is reasonable to conclude that the punishment was not disproportionate in relation to Ross' participation in the crime.

*Ross* 716 F.2d at 1533. Thus, petitioner's attempt to distinguish this case from *Adams* on the basis that petitioner did not "act alone" is without merit, and it is clear that even if petitioner could raise this ground before this Court on its merits, this claim would afford him no relief.

Because the Court has rejected petitioner's claim under *Enmund*, his argument concerning error in one of two theories submitted to the jury is rendered moot. *See* Petition at 15, Memorandum at 50.[5]

---

5. Although petitioner does not directly raise in his Memorandum the issue of "undue emphasis" concerning the robbery instruction vis-a-vis felony murder, an issue that was asserted on direct appeal, *see* Main Brief at 10–12; Petition at 12, the Memorandum makes a passing reference to this claim in discussing the *Enmund* issue. *See* Memorandum at 49–50. To the extent petition-

■ Petitioner also argues that he is entitled to relief because the trial court failed to instruct the jury on second degree felony murder. Although this issue was raised on direct appeal, the Supreme Court of Florida held that petitioner neither requested an instruction on second degree felony murder nor objected to the omission by the trial court of such an instruction. As a result, the Supreme Court of Florida found that the issue was not properly before it. *Griffin I* at 1028. Consequently, petitioner may not seek habeas relief in this Court absent a showing of cause for noncompliance with this state procedural rule, and actual prejudice as a result of the failure to instruct. *See Ford v. Strickland*, 696 F.2d 804, 816 (11th Cir. 1983).

Petitioner cites the decision in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), as "cause" for his failure to request this instruction or to object to the trial court's omission of the charge. Petitioner states that this 1980 opinion was not decided until after the trial of this cause, and defense counsel could not have known about it at the time of trial.[6] *Beck* held that a sentence of death may not be imposed after a jury verdict of guilt for a capital offense when the jury was not permitted to consider a verdict of guilt for a lesser-included noncapital offense and the evidence would have supported such a verdict. *Beck* did not, however, discuss the effect of counsel's failure to request such an instruction, or the failure to object to

the omission of such a charge. Indeed, the only discussion of the procedural default issue indicates that a different outcome might result if a state contemporaneous objection rule had been invoked. *See Beck*, 447 U.S. at 630 n. 6, 100 S.Ct. at 2386 n. 6.

More importantly, in order to show that "cause" existed for not raising this constitutional argument, petitioner must show that he "lacked the tools to construct [his] constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 133, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783 (1982). The discussion of the Court in *Beck* makes clear that a veritable plethora of such "tools" was at petitioner's disposal at the time of his trial.[7] Furthermore, even a cursory examination of petitioner's brief on direct appeal reveals that petitioner was well aware of the constitutional tools at his disposal. In his discussion of this issue in his main brief on appeal, petitioner cites at least two Supreme Court decisions—*Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)—upon which the Court in *Beck* relied in reaching its decision. *See* Main Brief at 18–19.

Not only does the court in *Beck* point to previous Supreme Court decisions as a basis for raising petitioner's claim, but it specifically cites Florida case law in effect at the time of petitioner's trial as providing similar guidance. *See Beck*, 447 U.S. at 636 n. 12, 100 S.Ct. at 2389 n. 12 and

---

er is now raising this issue, the Court is of the opinion that the Supreme Court of Florida correctly decided this issue on direct appeal. *Griffin I* at 1028.

In addition, to the extent petitioner is challenging the trial court's failure to reinstruct on premeditated murder when it reinstructed on felony murder, *see* Petition at 12, this Court is also of the opinion that the Supreme Court of Florida correctly decided this issue for the reasons set forth in its opinion. *See id.*

6. Although not specifically raised in the Memorandum or Petition, petitioner strenuously argued this point on appeal to the Supreme Court of Florida following the 3.850 order. *See* Brief of Appellant Griffin, on appeal from denial of Motion to Vacate at 18–19.

7. The Court in *Beck* cited a number of opinions already decided at the time of petitioner's trial which indicated that a defendant might have a right to an instruction on lesser-included offenses. These include *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Court gave particular attention to its decision in *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), which the Court cited as evidence that "it has long been recognized" that an instruction on a lesser-included offense could be beneficial to a defendant. *Beck v. Alabama*, 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392 (1980).

accompanying text. Indeed, petitioner admits that Florida decisional law in effect at the time of his trial provided the basis for raising such a claim.[8] Thus, petitioner's argument that counsel could not raise this claim prior to the *Beck* decision is wholly without merit. Because petitioner must demonstrate both cause *and* prejudice for failure to timely raise a particular claim, *see Douglas v. Wainwright*, 714 F.2d at 1547, petitioner may not now assert this claim in a federal habeas proceeding.

Petitioner's next claim under this section is that the trial court erred in twice instructing the jury on felony murder without instructing the jury on robbery. *See* Memorandum at 55–56; Petition at 12. The Supreme Court of Florida rejected this claim, however, noting that Fla.R.Crim.P. 3.420 provides that a trial judge may recall a jury after it has retired[9] to give additional instructions or to correct any erroneous instructions that were previously given to them. *See Griffin* I at 1028. The Supreme Court of Florida distinguished the authorities cited in support of petitioner's position on this issue. *See id.*

 Petitioner's final attack on the trial court's jury instructions concerns the failure of the trial court to include an instruc-

tion on the presumption of innocence during its supplementary instruction to the jury. Although this issue was raised on direct appeal, the Supreme Court of Florida declined to consider the issue on its merits because counsel failed to ask for a repetition of this instruction and did not object to its omission. *See id.* This Court is of the opinion that this invocation of the contemporaneous objection is proper, for the reasons set forth above.[10]

### Point IV: Prosecutorial Misconduct

Petitioner asserts that the prosecutor's references to race during the trial, as well as his statements concerning the fate of petitioner's accomplice, rendered both the guilt/innocence phase and the sentencing phase of petitioner's trial fundamentally unfair and violated petitioner's right to due process. Petitioner's trial counsel, however, made no objection at trial to these allegedly improper comments; nor was this issue raised on direct appeal. Consequently, these claims are barred from review in a federal habeas corpus proceeding, absent a showing of cause for and prejudice from the procedural default. *See Ford v. Strickland*, 696 F.2d at 816–17. Petitioner has not demonstrated cause for[11] the default, and this Court, therefore, need not

**8.** "As noted in [*State v.*] *Jefferson*, [347 So.2d 427 (Fla.1977)], *under Florida law* the second degree felony murder instruction *must be given* if there are facts presented from which a jury could return a verdict of second degree felony murder ...." Memorandum at 52. More importantly, the fact that petitioner actually raised this claim as a matter of state law on direct appeal indicates that petitioner could have raised this issue as a matter of state law at the time of trial.

**9.** Although petitioner does not raise directly in his Memorandum the issue of the trial court's improperly entering judgment on an alleged second verdict as he did on direct appeal, *see* Main Brief at 26, the Memorandum makes a passing reference to this claim in discussing another issue. *See* Memorandum at 61; *see* also Petition at 12. To the extent petitioner is now raising this issue, the Court is of the opinion that the Supreme Court of Florida correctly decided this issue on direct appeal. *See Griffin* I at 1028–29.

**10.** Although petitioner claims that "this defect [in instructions] will be cognizable even in the absence of an objection at trial," Memorandum at 60, petitioner cites no authority that supports this proposition. The case that petitioner relies on primarily, *Arroyo v. Jones*, 685 F.2d 35 (2nd Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982), is, however, distinguishable. Petitioner attempts to equate the facts in *Arroyo* with the facts in this case by stating that defense counsel in *Arroyo*, like petitioner's trial counsel, "made no objection." Memorandum at 58. First, trial counsel in *Arroyo* failed to object to an unconstitutional instruction that was actually given, while counsel in the instant case merely failed to request that a permissible instruction be given a second time. Second, petitioner completely ignores *footnote 3 of the Arroyo* decision, which indicates that had the state court *not decided the merits* of the issue—something the Supreme Court of Florida refused to do in Griffin's case—procedural default would have barred consideration of the claim.

**11.** *See supra* note 2.

consider whether any prejudice resulted therefrom. *See Douglas v. Wainwright,* 714 F.2d at 1547.

### Point V: Unconstitutional Instruction on Premeditation

██ Petitioner argues that the trial court erroneously charged the jury that petitioner could be convicted of the premeditated murder of Glen Carell Lundgren, or that the trial court could not instruct on premeditation at all when there was no evidence of premeditation in the record. Petitioner did not, however, raise this point on direct appeal, *see* Supreme Court Petition at 10–11, and his failure to do so bars him from raising these issues in a federal habeas corpus proceeding, absent a showing of cause for and prejudice from the procedural default. *See Ford v. Strickland,* 696 F.2d at 816–17. Petitioner has demonstrated neither cause for [12] nor prejudice from this default, and therefore petitioner is now barred from raising this issue.

### Point VI: Death Penalty Discriminatorily Applied Because of Victims' Race

Under this section, petitioner asserts that he was denied due process of law and equal protection of the laws in violation of the eighth and fourteenth amendments of the United States Constitution by the discriminatory imposition of the death penalty throughout Florida and in this case. In support of this claim, petitioner has attached several statistical studies which allegedly indicate that the death penalty may have been imposed in a disproportionate manner against defendants convicted of murdering white *victims.*

██ Both the trial court at the 3.850 hearing and the Supreme Court of Florida on appeal found that this issue was waived by procedural default. This Court is of the opinion, however, that the decisional law of this state indicates that a petitioner's claim of discriminatory imposition of the death penalty is cognizable at a 3.850 hearing. In *Henry v. State,* 377 So.2d 692 (Fla.1979), the Supreme Court of Florida reversed the

trial court for refusing to hear a claim raised at a 3.850 hearing that the death penalty was imposed in a discriminatory manner, holding that "[t]his contention can properly be raised as a subject for consideration in a proceeding for post-conviction relief." Accordingly, the Court is of the opinion that petitioner's claim could have been presented to the state courts and is now properly before this Court.

██ After reviewing petitioner's Petition and Memorandum and the studies attached thereto, this Court is of the opinion that the victim-based statistics offered in support of his claim are not substantially different from those rejected by the court in *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978). The court in *Spinkellink* held that an allegation that the death penalty in Florida is being discriminatorily applied to defendants, supported only by statistical studies concerning victim impact, would not state a cognizable constitutional claim. *See also Sullivan v. Wainwright,* 721 F.2d 316, 317 (11th Cir.), *application for stay of execution denied,* —— U.S. ——, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983); *Adams v. Wainwright,* 709 F.2d at 1449.

The court in *Spinkellink* concluded that to state a proper constitutional claim under this theory, a petitioner must also show that Florida's death penalty system specifically and intentionally discriminated against him, either because of his own race or the race of his victim. *See Spinkellink* at 614 n. 40; *Sullivan,* 721 F.2d at 317. Petitioner asserts that the prosecutor's remarks during the trial of this case indicate the requisite purposeful discrimination. However, this Court agrees with the finding of the Supreme Court of Florida in *Griffin* II that the remarks of the prosecutor do not evince a purposeful discrimination. Indeed, as heretofore stated, when taken in the context of the proceedings in which they were made, the statements appear to be made more in the way of identification of the victim or defendant, rather than to prejudice the petitioner. Furthermore, the testi-

---

**12.** *See supra* note 2.

mony of petitioner's trial counsel at the 3.850 hearing confirms this.[13]

The *Spinkellink* holding that there must be intentional discrimination apart from the statistical information supplied to the Court can be said to have been expanded slightly by the decisions in *Smith v. Balkcom*, 660 F.2d 573 (5th Cir.1981) (Unit B), *modified*, 671 F.2d 858 (5th Cir.) (Unit B), *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982), and *Smith v. Kemp*, 715 F.2d 1459 (11th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983). The modified opinion in *Smith v. Balkcom* indicated that "only if the [statistical] evidence of disparate impact is so strong that the only permissible inference is one of intentional discrimination will it alone suffice." *Adams v. Wainwright*, 709 F.2d at 1449, citing *Smith v. Balkcom*, 671 F.2d at 859. After an examination of the various studies supplied to the court, the undersigned first concludes that the studies are insufficient to evince a purposeful discrimination against petitioner. Second, petitioner presents the type of victim impact studies that courts of this circuit have previously rejected. *See Sullivan*, 721 F.2d at 317. Moreover, petitioner in this case does not argue that the studies he attaches in support of his claim *preclude* the existence of other variables, which once controlled for in the studies, would eliminate race of the victim and race of the defendant as significant predictors of imposition of the death penalty.

Uncontrolled variables are present even in the study upon which petitioner relies most heavily.

*Omitted Variables.* The problem of omitted variables is more severe than the problem of missing data. The FBI's data on homicides are reasonably complete in their coverage, but *they include a relatively small number of items on the reported homicides.* The omitted items include some important judicial processing and sentencing variables; one *could argue that the observed racial disparities might in fact have been produced by the operation of one or more of these omitted variables.* In particular, the FBI's data lack information on the strength of the evidence of the suspects' guilt and on their criminal records, and while these data include several items that permit us to assess the relative gravity of the homicides, they omit many others.

... The important question here is whether the observed pattern of discrimination by race of victim might be substantially explained by the legally permissible operation of omitted variables. That possibility seems remote.

Gross & Mauro, *Patterns of Death: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization* at 100–01 (Emphasis added) (unpublished manuscript 1983). Even though the au-

---

**13.** Q [State Attorney] All right. Now, it has been suggested to you that the prosecutor, in this case, made certain remarks dealing with the language "white boy" in voir dire and in opening statement and I believe in one other context, and it is suggested that you made no objections at that time.

Did you have the feeling or the sense that racial prejudice was being brought into the trial by the prosecutor based on those remarks?

A [Mr. Ireland, petitioner's trial counsel] No.

Q Did you find any accent or lingering on those remarks, on the part of the prosecutor, that *suggests* that he was bringing that into the case?

A I found no reason in the two instances, well, two instances in voir dire or opening and then one later on, for me to raise an objection to.

All it would do, if it hit me, would be to bring more light from the fact that there was a difference in race.

Q Now, based on your trial experience, to some degree over that period of time, had you felt that the prosecutor's remarks in those very few limited pages, out of a multi-hundred page transcript, had been for the purpose of eliciting racial prejudice, would you have brought it to the attention of the Court?

A Yes, sir.

Q Did you find anything, in this trial, that led you to go to the Court to object about the prosecutor's remarks?

A No, I did not.

3.850 Hearing II at 186–87.

thors attempt to substantiate the validity of their study by characterizing as "remote" the possibility that an uncontrolled variable might affect the statistical significance of the race-victim variable, the authors in the passage above clearly admit that other inferences are possible such that their conclusion is *not* "the only permissible inference ... of intentional discrimination." *Adams v. Wainwright,* 709 F.2d at 1449.

Petitioner's second study admits to limitations resulting from uncontrolled variables as well as legally improper assumptions.

Is it possible that the patterns of differential treatment we have documented here do not actually reflect arbitrariness and discrimination in the administration of capital punishment? The answer turns on whether these apparent departures from even-handed justice can be explained in terms of legally relevant factors or are the result of legally irrelevant influences.

*A critical limitation* on the available legally relevant explanations for such treatment differentials is that *they must come from a strictly defined set of legally relevant factors which are enumerated as aggravating and mitigating circumstances in the statutes that provide for the death penalty.* In other words, a plausible explanation of these racial and geographic disparities of treatment would have to be found among these statutory provisions.

A further limitation is set by the empirical fact that only a subset of these legally possible explanations are found sufficiently often to account for racial and regional differences in the likelihood of a death sentence. That is, aside from the heinous and vile, and felony-related aggravating circumstances, the murder weapon, which may reflect intent or premeditation; multiple offenders and multiple victims, both of which suggest an imbalance or excess in the circumstances

leading to the killing; and youthful, elderly, and female victims, suggesting a relatively vulnerable victim whom the offender has attacked or exploited.

Bowers & Pierce, *Arbitrariness and Discrimination under Post-Furman Capital Statutes,* Crime & Delinquency, 563, 628–29 (Oct.1980) (emphasis added). At least one flaw in the authors' analysis is illustrated in this passage. Under Florida law, the mitigating factors which may be considered by the sentencer are *not* confined to "a strictly defined set of legally relevant factors ... enumerated ... in the statute." *Id. See Spinkellink,* 578 F.2d at 620–21; *Palmes* I. Indeed, the Supreme Court has stated that a statute which precluded the sentencer from considering mitigating evidence outside the statutory definition of mitigating evidence that the defendant proffers would contravene the eighth and fourteenth amendments. *See Lockett v. Ohio,* 438 U.S. 586, 606 n. 15, 98 S.Ct. 2954, 2966 n. 15, 57 L.Ed.2d 973 (1978). Moreover, recent cases have indicated that the consideration of non-statutory aggravating factors in certain situations does not constitute reversible error. *See Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 3434–35, 77 L.Ed.2d 1134 (1983); *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2743–44, 2748–49, 77 L.Ed.2d 235 (1983); *Alvord v. Wainwright,* at 1286. Thus, the very assumptions upon which the authors at least in part based their findings—that a "critical limitation" exists with respect to statutory aggravating and mitigating circumstances—are incorrect.

Finally, petitioner's third article also has uncontrolled variables, precluding petitioner from asserting that the author's conclusion excluded all other possible inferences of intentional discriminations.

The strength of the racial disparities observed in this study will fluctuate as other potentially relevant variables are introduced, such as the sex, age, and criminal histories of the victim and defendant or region of the state.

Radlett, *Racial Characteristics and the Imposition of the Death Penalty*, 46 American Sociological Review 918, 926 (1981).

Furthermore, the study [14] upon which petitioner relies as "confirm[ing] the validity and reliability of the Gross Mauro study"—the report forming the bulk of petitioner's argument in this case—has been rejected by a sister court in this circuit as "incapable of demonstrating that [the petitioner] was singled out for the death penalty because of the race of either himself or his victim," and because "none of the models utilized by petitioner's experts are sufficiently predictive to support an inference of discrimination." *McClesky v. Zant*, 580 F.Supp. 338 (N.D.Ga.1984).

In conclusion, petitioner has not demonstrated the purposeful discrimination that *Spinkellink* and *Smith v. Balkcom* require, either through the allegedly inflammatory remarks of the prosecutor at trial or by the statistical studies attached to his Petition and Memorandum. *See Adams*, 709 F.2d at 1449.[15]

Accordingly, it is

**ADJUDGED:**

1. That the Petition For Writ of Habeas Corpus is hereby denied;

2. That the Application for a Stay of Execution is hereby denied except to the extent provided for herein;

3. In order to allow the petitioner an opportunity to perfect an appeal of this decision and to seek a further stay of execution from the United States Court of Appeals for the Eleventh Circuit, this Court's Temporary Stay of Execution shall remain in full force and effect, thereby staying the execution of the death penalty until 7:00 a.m. on Friday, March 23, 1984;

4. That a certificate of probable cause, pursuant to 28 U.S.C. § 2253 (1982), is hereby entered. The Court has previously found petitioner to be insolvent. The petitioner may proceed *in forma pauperis* without the filing of the affidavit prescribed by 28 U.S.C. § 1915 (1982). This is done solely for the purpose of allowing the petitioner to proceed through the appellate process expeditiously and is in no way a reflection of any doubt on the Court's part as to the correctness of the order entered herein; and

5. That the Clerk shall enter Judgment dismissing this action.

**14.** Baldus, Woodworth & Pulaski, *Discrimination and Arbitrariness in Georgia's Capital Charging and Sentencing System: A Preliminary Report* (unpublished manuscript 1983).

**15.** This Court is aware of the holdings in *Spencer v. Zant*, 715 F.2d 1562, 1578–83, *reh'g en banc granted* (11th Cir.1983), but the undersigned is also aware that where a case has been granted a rehearing en banc, the effect of that decision "is to vacate the panel decision and to stay the mandate" of the Court. 11th Cir. R. 26(k).

However, the Court also concludes that it need not issue a stay in this case pursuant to the dictates of *Goode v. Wainwright*, 670 F.2d 941, 942 (11th Cir.1982), because "the very decisions on which [this Court is] bas[ing] its determination [are not] pending on appeal." *Id.* That is, the Court's holding in this case is merely that

petitioner has not met the burden of proof enunciated in *Smith v. Balkcom* and *Adams v. Wainwright*. On the other hand, the issue in *Spencer* appears to involve the need for an evidentiary hearing. The court in *Spencer* remanded the case for an evidentiary hearing because the study upon which petitioner relied in support of his claim was not available except through live testimony. *See Spencer*, 715 F.2d at 1582. In contrast, in the instant case, the three research studies have been submitted to the Court in final printed form, and this Court has had adequate time to analyze them without the need for an evidentiary hearing. *See Sullivan v. Wainwright*, —— U.S. ——, 104 S.Ct. 450, 451 n. 3, 78 L.Ed.2d 210 ("This case is different from [*Spencer* ] because in this case [the courts] had the opportunity to consider the statistics.").